In re Rick G. BUCAK, Debtor.

**River View Land Company, Inc., Plaintiff,**

v.

**Rick G. Bucak, Defendant.**

**Bankruptcy No. 01–27584–K. Adversary No. 01–0701.**

United States Bankruptcy Court, W.D. Tennessee, Western Division.

May 17, 2002.

W.O. Luckett, Jr., Esquire, Luckett Tyner Law Firm, P.A., Clarksdale, MS, for Plaintiff River View Land Company, Inc.

Sidney F. Beck, Jr., Esquire, Olive Branch, MS, for Defendant Mr. Rick G. Bucak.

Ellen B. Vergos, Memphis, TN, United States Trustee.

P. Preston Wilson, Memphis, TN, Chapter 7 Trustee of the estate of the above-named debtor.

## MEMORANDUM AND ORDER RE PLAINTIFF'S MOTION FOR JUDGMENT ON THE PLEADINGS COMBINED WITH NOTICE OF THE ENTRY THEREOF

DAVID S. KENNEDY, Chief Judge.

Plaintiff, River View Land Company, Inc. ("River View"), has filed a motion for a judgment on the pleadings arising out of the above-captioned adversary proceeding previously filed by it against the defendant, the above-named chapter 7 debtor, Rick G. Bucak ("Mr.Bucak").[1] River View primarily seeks a judicial determination in accordance with the doctrine of collateral estoppel that its prepetition judgment for attorney's fees in the amount of $9,063.12 entered against Mr. Bucak in the Chancery Court of Coahoma County, Mississippi is non-dischargeable under 11 U.S.C. § 523(a)(6) and the holding of *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

By virtue of 28 U.S.C. § 157(b)(2)(I), this is a core proceeding. The court has subject matter jurisdiction under 28 U.S.C. §§ 1334(b) and 157(a)-(b). Based on the pleadings, the judicial history involving the immediate parties including a consideration of the applicable and relevant State Court record, this chapter 7 case record as a whole, and statements of counsel, the following shall constitute the court's findings of fact and conclusions of law in accordance with FED. R. BANKR. P. 7052.

The relevant background facts and judicial history giving rise to this action may be briefly summarized as follows. On April 25, 1999, a physical confrontation occurred on the grounds of a hunting club owned by River View and located in Coahoma County, Mississippi involving Mr. Bucak, a guest, and Mr. John B. Laney ("Mr. Laney"), a shareholder of River View. As a result of this incident and events which occurred thereafter, both River View and Mr. Laney filed separate civil actions against Mr. Bucak in the Coahoma County, Mississippi State Courts.

---

1. FED. R. BANKR. P. 7012(b) provides, inter alia, that Rule 12(c) F.R. CIV. P. applies in adversary proceedings.

Mr. Laney's civil action jury trial against Mr. Bucak for personal injuries was filed and is currently pending in the Coahoma County, Mississippi Circuit Court ("Circuit Court"). Mr. Bucak strongly denies that he is liable to Mr. Laney (discussed more fully, *infra*).

River View's civil action was filed in the Chancery Court of Coahoma County, Mississippi ("Chancery Court") seeking injunctive relief permanently enjoining Mr. Bucak from entering upon its lands arising out of the confrontation between Mr. Laney and Mr. Bucak. River View's Chancery Court complaint additionally sought attorney's fees and costs in connection with the filing and prosecution of its underlying injunctive complaint. Mr. Bucak answered River View's complaint through his attorney; joint discovery was later conducted; and the Chancery Court action thereafter was set for a trial on the merits. One week prior to the trial, Mr. Bucak informed the Chancery Court that he would not attend the trial or attempt any further defense in the action commenced by River View. Mr. Bucak states, through counsel, that because of financial reverses, he was financially incapable of defending the action commenced against him by River View.

On October 10, 2000, the Chancery Court conducted an uncontested bench trial without Mr. Bucak, heard testimony, and reviewed exhibits from River View's witnesses. An order was subsequently entered by that Court dated October 10, 2000 in favor of River View against Mr. Bucak for injunctive relief permanently enjoining Mr. Bucak from entering upon the lands (*i.e.*, the hunting club) of River View and also for the accompanying attorney's fees incurred in the amount of $9,063.12. Mr. Bucak filed no appeal, and that order became final.

River View subsequently sought to enroll and enforce the judgment of the Chancery Court by filing an appropriate action in the Circuit Court of Shelby County, Tennessee. Mr. Bucak was served with process in Tennessee. Mr. Bucak thereafter filed an original petition under chapter 7 of the Bankruptcy Code ("Code") on May 23, 2001. River View timely filed the above-referenced complaint in the bankruptcy court under 11 U.S.C. § 523(a)(6) seeking a judicial determination that its prepetition judgment for attorney's fees against Mr. Bucak should be excepted from his general discharge.

The narrow and ultimate question presented for judicial determination, within the context of a motion for a judgment on the pleadings, is whether River View's prepetition money judgment for attorney's fees in the amount of $9,063.12 against Mr. Bucak is nondischargeable under 11 U.S.C. § 523(a)(6). The burden of proof in this adversary proceeding and instant motion is on River View by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991). Exceptions to a debtor's discharge are strictly construed against the objecting creditor and liberally in favor of the debtor. *Gleason v. Thaw*, 236 U.S. 558, 35 S.Ct. 287, 59 L.Ed. 717 (1915).

For the reasons mentioned below, this court finds and concludes, considering a totality of the particular facts and circumstances and applicable law, that (1) the prepetition judgment of $9,063.12 for attorney's fees in favor of River View against Mr. Bucak is dischargeable and (2) River View's prepetition judgment against Mr. Bucak for injunctive relief is nondischargeable.[2]

2. It is the sense of this court, also considering

a totality of the particular facts and circum-

It generally is noted that the legal effect of a bankruptcy discharge is grounded upon the public policy of freeing the honest, but unfortunate, debtor from the financial burdens of prepetition debts. *See, e.g., Williams v. United States Fidelity & Guar. Co.*, 236 U.S. 549, 554–55, 35 S.Ct. 289, 59 L.Ed. 713 (1915); *Local Loan Co. v. Hunt*, 292 U.S. 234, 244, 54 S.Ct. 695, 78 L.Ed. 1230 (1934). It is in the public and also private interest to allow the honest, but unfortunate, debtor to begin "a new opportunity in life" with a clear field for the future free from the obligations and responsibilities consequent upon financial misfortunes. *Hunt* at 244, 54 S.Ct. 695. *See also* S.Rep. No. 95–989, at 7 (1978), *reprinted in 1978 U.S.C.C.A.N. 5787, 5793* (indicating that the very heart of the fresh start provisions lies in the section 727 discharge).

■■■ The bankruptcy discharge serves, in essence, to release an individual debtor's *in personam* dischargeable obligations (*e.g.*, most prepetition attorneys' fees) thereby permanently enjoining creditors from collecting discharged debts from the debtor. *See* 11 U.S.C. § 524(a). However, a discharge in bankruptcy is not absolute. *See* 11 U.S.C. §§ 727(a) and 523(a). Moreover, it is fundamental that a bankruptcy discharge is a privilege and not a constitutional right. *See, e.g., In re Kras*, 409 U.S. 434, 93 S.Ct. 631, 34 L.Ed.2d 626 (1973).

Furthermore, it is noted that the Congress has statutorily excepted particular and limited categories of specific debts from the general discharge of debtors. 11 U.S.C. § 523(a). The debtor's general discharge under the Code serves countervail-

ing policy considerations while preserving the integrity of the discharge and the honest, but unfortunate, debtor's fresh financial start. *See, for example*, George H. Singer, *Section 523 of the Bankruptcy Code: The Fundamentals of Nondischargeability in Consumer Bankruptcy*, 71 Am.Bankr.L.J. 325 (1997). Simply put, the nondischargeability of certain particular debts, as a policy consideration of the Congress, rises to a higher plane or level than the granting of a debtor's full discharge. That is, a debtor may receive a general discharge, but one or more particular debts may be excepted from that discharge. *See* 11 U.S.C. §§ 727(a) and 523(a).

For example, the Congress legislated via 11 U.S.C. § 523(a) that the following particular debts, among others, are not subject to a bankruptcy discharge: certain taxes; debts obtained by fraud, false pretenses, and false misrepresentations; certain unscheduled debts; larceny and embezzlement; alimony and child support; willful and malicious injury to the person or property of another; criminal fines, penalties, for forfeitures owed to the government; most student loans; previously scheduled debts that were judicially declared nondischargeable in a prior case; and debts that arise from accidents proximately caused by the debtor while under the influence of drugs or alcohol while operating a motor vehicle. See 11 U.S.C. § 523(a); *Grogan v. Garner*, 498 U.S. 279, 287, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

Applicable here for nondischargeable consideration is section 523(a)(6) of the Code which excepts from discharge a debt arising out of the debtor's "willful and

stances and applicable law, that the prepetition injunctive relief granted in favor of River View by the Chancery Court against Mr. Bucak is not a "claim" subject to discharge by virtue of 11 U.S.C. § 101(5)(B). Thus, the injunctive portion of the Chancery Court Order is nondischargeable. Of course, Mr. Laney's lawsuit against Mr. Bucak is the subject of another proceeding—not dispositively addressed here.

malicious injury" to the person or property of another. More specifically, section 523(a)(6) provides, in relevant part, that:

(a) A discharge under section 727 . . . of this title does not discharge an individual debtor from any debt—

\* \* \* \* \* \*

(6) for willful and malicious injury by the debtor to another entity or to the property of another entity.

In addition, section 523(c)(1) of the Code provides that:

Except as provided in subsection (a)(3)(B) of this section, the debtor shall be discharged from a debt of a kind in paragraph (2), (4), (6), or (15) of subsection (a) of this section, unless, on request of the creditor to whom such debt is owed, and after notice and a hearing, the court determines such debt to be excepted from discharge under paragraph (2), (4), *(6)*, or (15), as the case may be, of subsection (a) of this section. (emphasis added).

It parenthetically is noted that the Circuit Court in a jury trial to be conducted later will eventually decide Mr. Laney's pending personal injury action (*i.e.*, the bifurcated liability issue) against Mr. Bucak by virtue of the concurrent jurisdictional provisions existing under 28 U.S.C. § 1334(b), applicable state laws, and prior order of this court; however, the dischargeability of any State court judgment against Mr. Bucak in favor of Mr. Laney remains under the exclusive jurisdiction of the United States bankruptcy court. 11 U.S.C. § 523(c)(1).

 Since the word "willful" in section 523(a)(6) of the Code modifies the word "injury," this indicates that the granting of a nondischargeability judgment requires a deliberate and intentional act or injury by the debtor to the person or property of another entity—not just a deliberate and intentional act which leads to injury (or

serious breach of an agreement). *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998).

 While some debate exists regarding the applicable definition of the adjective "malicious" in the context of section 523(a)(6), it has been held that "malicious" means a conscious disregard of one's duties or without just cause or excuse; it does not require ill-will or specific intent to do harm. *See, for example, Tinker v. Colwell*, 193 U.S. 473, 486, 24 S.Ct. 505, 48 L.Ed. 754 (1904); *In re Voltolini*, 48 B.R. 199, 201 (Bankr.D.Mass.1985); *In re Capparelli*, 33 B.R. 360, 365 (Bankr.S.D.N.Y. 1983); *In re Klix*, 23 B.R. 187 (Bankr. E.D.Mich.1982); *see also* Karen N. Fischer, *The Exception to Discharge for Willful and Malicious Injury: The Proper Standard for Malice*, 7 Bankr. Dev. J. 245 (1990) (discussing the specific intent and implied malice standards in section 523(a)(6) proceedings).

 The definition of "malicious," for section 523(a)(6) purposes, is proven when a creditor shows that a debtor acted in conscious disregard of the rights of others, without just cause or excuse. *Tinker*, 193 U.S. at 486, 24 S.Ct. 505; *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir.1986)(offering the Sixth Circuit's definition of the adjective "malicious" in the section 523(a)(6) context); *In re Adams*, 147 B.R. 407, 418 (Bankr.W.D.Mich.1992). The drafting of section 523(a)(6) of the Code is somewhat analogous to intentional torts versus negligent or reckless torts. *See Kawaauhau v. Geiger*, 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998). Generally speaking, intentional torts require that an actor (*e.g.*, the debtor) intend the natural consequences of an act, rather than simply the act itself. *Id.* It is noted that a debtor does not commit a "willful or malicious injury" under section 523(a)(6) of the Code unless he/she desires to cause

the consequences of his/her act or believes that those consequences are substantially certain to result. *Markowitz v. Campbell,* 190 F.3d 455, 464 (6th Cir.1999)(applying the rationale set forth in *Geiger).*

As noted, the attorney's fees in question here were incurred during the pursuit of a civil action for injunctive relief filed by River View against Mr. Bucak on May 5, 1999, in the Chancery Court. In that complaint, River View stated, *inter alia,* that Mr. Bucak was authorized, as a guest, to use the hunting club owned by River View since he was the son-in-law of a stockholder of the hunting club. However, Mr. Bucak's privileges and use of the hunting club, like all other members and guests, including Mr. Laney, were pre-conditioned upon his observance of certain promulgated rules and regulations established in a written agreement of the hunting club dated January 8, 1960. River View successfully proved at the uncontested trial in the Chancery Court that Mr. Bucak violated the general provisions found in sections 34(E) and (F) of the agreement while on the property of River View on April 25, 1999.[3]

On October 10, 2000, the Chancery Court permanently enjoined and prohibited Mr. Bucak from entering upon the lands of River View (*i.e.,* the hunting club) and concomitantly awarded an accompanying money judgment of $9,063.12 for attorney's fees plus court costs against Mr. Bucak in favor of River View and its attorney for professional services rendered in successfully obtaining the injunctive relief. It again is noted that although an answer was filed by Mr. Bucak in the Chancery Court lawsuit, he, nevertheless, notified the court a week prior to the trial date that he would allow a judgment to be entered against him, as he would not be attending the trial scheduled on October 10, 2000.[4] River View recorded its Chancery Court judgment on March 14, 2001, in the Circuit Court of Shelby County, Tennessee, pursuant to TENN. CODE ANN. § 26–6–101. *See* Complaint ... to Determine Dischargeability of a Debt, "Plaintiff's Exhibit C," styled, *Plaintiff, River View Land Company, Inc., Complaint to Enforce a Foreign Judgment Under* T.C.A. § 26–6–101 *et. seq.*

It is emphasized in the instant bankruptcy proceeding that there is insufficient evidence arising out of the Chancery Court action and record that Mr. Bucak actually intended for his conduct at the hunting club to cause a "willful and malicious injury" (*i.e.,* a maliciously deliberate and intentional injury) to *River View,* a corporate entity, or its property, as contemplated in section 523(a)(6) of the Code.[5] The liability

---

**3.** In its Chancery Court complaint, River View specifically cites section 34(E) and (F) of the agreement dated January 8, 1960, entitled *Violations and Penalties,* that states the broad powers wielded by the Board of Directors of River as follows:

(E) It shall be the duty of the Board of Directors to classify any violation which is not definitely covered in the Rules and Regulations.
(F) It shall be mandatory on the Board of Directors to enforce the above Rules, Regulations, and Penalties, by enjoining the offender from use of the property, by court order, if necessary.

**4.** *Compare In re Bursack,* 65 F.3d 51 (6th Cir.1995); *see also In re Calvert,* 105 F.3d 315 (6th Cir.1997).

**5.** In the memorandum in opposition to River View's motion for judgment on the pleadings, Mr. Bucak asserts that he acted in self defense in order to protect himself and his minor son and refutes that he abandoned an unconscious Mr. Laney manifested by his act of summoning the Sheriff's Department in Clarksdale, Mississippi and his return to the scene to help Mr. Laney to the hospital. *See Memorandum Brief in Opposition to Motion of River View Land Company for Judgment on the Pleadings* filed on April 3, 2002.

and dischargeability issues between Mr. Bucak and Mr. Laney, as previously discussed, will be resolved in separate, bifurcated proceedings.

In this action against Mr. Bucak, River View has submitted, *inter alia*, the Chancery Court's prepetition order in support of its instant motion for a judgment on the pleadings in attempting to qualify the conduct of Mr. Bucak as "willful and malicious injury" against River View, a corporate entity, or its property. It is true that River View's complaint filed in the Chancery Court specifically alleges that Mr. Bucak "willfully and maliciously brutally and physically assaulted" Mr. Laney. *See Complaint ... to Determine Dischargeability of a Debt,* "Plaintiff's Exhibit A," at page 4 filed on May 5, 1999, styled *Complaint for Injunctive Relief.* The text of the Chancery Court's prepetition order classifies Mr. Bucak's behavior at the hunting club as "outrageous" and also in "flagrant violation of the letter and spirit and of the [hunting club's] rules and regulations set forth in the Agreement." *See* River View's *Complaint ... to Determine Dischargeability of a Debt,* "Plaintiff's Exhibit B," at page 2, styled *Chancery Court Order No. 99–299,* dated October 10, 2000.

As previously discussed, in order for River View to meet the essential statutory requirements under section 523(a)(6) of the Code, Mr. Bucak would have to have maliciously caused deliberate and intentional injury to the objecting corporate entity, River View, or its property. *See* 11 U.S.C. § 523(a)(6)(declaring debts "for willful and

malicious injury by the debtor to *another entity or to the property of another entity* " as being non-dischargeable)(emphasis added); 11 U.S.C. § 101(15)(defining an *entity* as including a *person,* estate, trust, governmental unit, and United States trustee); 11 U.S.C. § 101(41)(defining *person* as including an individual, partnership, and *corporation* ).

While Mr. Bucak assertedly maliciously caused deliberate and intentional injury (*i.e.,* willful and malicious injury) to Mr. Laney, there is insufficient evidence in this record that he additionally and maliciously caused such deliberate and intentional injury to River View, a corporate entity, or its property as contemplated in section 523(a)(6) of the Code.[6] Other than a breach of its hunting club agreement, River View offers no substantive proof demonstrating a cognizable "willful and malicious" injury to it as a corporate entity, its land, or its property.

Simply stated, the "willful and malicious injury" complained of here by River View is personal to Mr. Laney, who is the one who allegedly suffered the nondischargeable injury inflicted by Mr. Bucak—not River View or its property. That is, River View did suffer the unfortunate effects of one its guests materially breaching the terms of a use agreement which defines certain proscribed conduct; however, such conduct regarding River View cannot under the circumstances be defined as a "willful and malicious injury" as contemplated under section 523(a)(6) of the Code to this *corporate entity (i.e.,* River View)

6. Once again, it is parenthetically observed that the personal injury lawsuit filed by Mr. Laney against Mr. Bucak has been bifurcated and is pending in the Circuit Court, which has concurrent jurisdiction to adjudicate the "liability" issue. Once the jury trial lawsuit is finalized, the United States bankruptcy court will determine the "dischargeability" of the judgment, if any, by virtue of 11 U.S.C.

§ 523(c)(1). *Grogan v. Garner, supra.* Interestingly, since River View's prepetition judgment against Mr. Bucak arose from an uncontested trial, it, of course, is possible that Mr. Bucak could prevail in the pending lawsuit involving Mr. Laney. Nonetheless, River View seeks a ruling here prior to the outcome of the pending lawsuit involving Mr. Bucak and Mr. Laney.

or its property based upon the facts and circumstances existing here. Assuming arguendo that Mr. Bucak "willfully and maliciously" injured Mr. Laney, such willful and malicious injury should not be vicariously imputed in favor of River View so as to except its attorney's fees from discharge.[7]

Accordingly, River View's prepetition attorney's fee judgment in the amount of $9,063.12 against Mr. Bucak is dischargeable; however, the portion of the prepetition Chancery Court Order involving the injunctive relief, discussed above, is not subject to discharge.[8]

Based on all the foregoing and consideration of the entire case record as a whole,

**IT IS ORDERED AND NOTICE IS HEREBY GIVEN**: That the instant motion for a judgment on the pleadings filed by the plaintiff, River View Land Company, Inc., against the defendant, the above-named chapter 7 debtor, Rick G. Bucak, results in River View's prepetition judgment for attorney's fee, discussed above, being judicially declared to be dischargeable; however, the injunctive relief referred to in the prepetition order in favor of River View, also discussed above, is hereby declared to be nondischargeable. Of course, the liability and non-dischargeability issues existing and pending between Mr. Laney and Mr. Bucak will be saved for another day.

---

7. *Compare, e.g., In re Eggers,* 51 B.R. 452 (Bankr.E.D.Tenn.1985); *In re Horne,* 46 B.R. 814 (Bankr.N.D.Ga.1985); *In re Austin,* 36 B.R. 306 (Bankr.M.D.Tenn.1984); *In re Sintobin,* 253 B.R. 826, 830 (Bankr.N.D.Ohio 2000). Under § 523(a)(6), it is the debtor who must act in causing the willful and malicious injury to another or the property of another entity. It has been universally held that a person's willful and malicious actions cannot be imputed to another person or entity for the purpose of holding that debt nondischargeable under § 523(a)(6). Likewise, the injury cannot be imputed to another entity or the property of another entity if the entity did not actually suffer the underlying injury.

8. *Compare, for example, In re Marshall,* 144 B.R. 930 (Bankr.M.D.Fla.1992)(Despite assertions by the moving party to apply principles of collateral estoppel, the court refused to grant summary judgement and allow the imposition of attorneys fees in a 523(a)(6) proceeding because the court expressed doubts regarding the willful and malicious injury involved in effectuating the state court injunction.).