United States Court of Appeals
Fifth Circuit

**F I L E D**

April 7, 2006

Charles R. Fulbruge III
Clerk

IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

No.  05-10777

In The Matter Of:   WAYNE CHARLES TOMASEK

Debtor

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

PAUL DAVIS; ALENE DAVIS,

Appellants,

versus

WAYNE CHARLES TOMASEK,

Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
No. 04-CV-2673

---

Before HIGGINBOTHAM, DAVIS, and STEWART, Circuit Judges.

CARL E. STEWART, Circuit Judge:[*]

Plaintiff-Appellants Alene and Paul Davis ("the Davises") appeal the district court's

affirmance of the bankruptcy court's refusal to deny discharge of debts allegedly owed by debtor

---

[*]Pursuant to 5th Cir. R. 47.5, the court has determined that this opinion should not be
published and is not precedent except under the limited circumstances set forth in 5th Cir. R.
47.5.4.

Wayne Charles Tomasek, Jr. ("Tomasek") to the Davises. The bankruptcy court determined that "any debt Tomasek may owe to the Davises is discharged" (1) because the Davises failed to show that Tomasek committed any act set forth in 11 U.S.C. §§ 523(a)(4) and (6); and (2) because the Davises failed to show that Tomasek committed any act set forth in 11 U.S.C.§§ 727(a)(4) and (6). For substantially the same reasons stated by the bankruptcy court, we affirm.

## I. FACTUAL AND PROCEDURAL BACKGROUND

The debtor-appellee, Tomasek began working for the Davises when he was about sixteen years old. The Davises owned a Taylor Rental Center franchise, a small business renting machinery, equipment, and party supplies to the public, through a corporation they entirely controlled, CMAP, Inc. When the Davises decided to retire, they agreed to sell the business to Tomasek and another employee, Wayne Ray. Tomasek was then in his early 20s; though he had gone to college part-time, he had no business experience other than working at Taylor Rental Center.

On January 1, 1995, CMAP, the Davises, Tomasek, and Ray signed three documents for the sale of the business. Tomasek and Ray personally signed a ten-year, $300,000 note, payable to CMAP; they also personally signed a security agreement covering the store's equipment, furniture, fixtures, and accounts receivable, naming CMAP as the secured party.[1] Tomasek and Ray also personally signed a lease for the building, of which the Davises were the lessors. These documents were all drawn by the Davises' attorney; Tomasek and Ray did not have a lawyer.

Because CMAP's fiscal year ended March 31, 1995, the parties agreed that the sale would not be effective until April 1, 1995, even though the parties dispute whether, as a legal matter, the

---

[1] In connection with the security agreement, CMAP filed a financing statement in Dallas County which expired in 2000 and was not renewed.

2

sale "closed" on January 1, 1995, or April 1, 1995. In the interim, the Davises referred Tomasek and Ray to a lawyer, who incorporated Tomray Enterprises ("Tomray") in February of 1995. Tomray opened bank accounts, obtained phone and utility services, and began operating the business on April 1, 1995. While Tomray owned the business, it made payments under the note to CMAP and payments under the lease to the Davises.

During its early years, Tomray suffered financial losses because of outdated, dilapidated, and lost property. Therefore, the corporation wrote off a substantial amount of inventory. Tomasek argues, however, that it is the nature of the rental business that property is frequently damaged, lost, or destroyed when it is rented; customers are often hard on rented items, and most rental items are used frequently. Therefore, Tomasek asserts that Tomray's losses were not abnormal. The record reflects that the building also suffered normal wear and tear, and that Tomray made some repairs to the building.

Tomray eventually pledged its equipment, furniture, fixtures, and accounts receivable to Security Bank to obtain working capital. Tomasek personally guaranteed this loan. Tomasek also received a personal loan from Security Bank, which the Davises guaranteed. Nonetheless, by 2001, Taylor Rental Center was having significant financial problems. Therefore, on April 26, 2001, Ray sold his interest in Tomray to Tomasek and exited the business. Tomasek became sole shareholder, president, and the only director of Tomray.

In October 2001, Tomasek received $65,000 from his mother's testamentary trust and used this money to pay the debts of Tomray, including past due amounts he owed under the note and the lease. Tomray borrowed more money from Security Bank in December 2001, using the money as working capital and to pay past due amounts under the note and the lease.

3

By early 2002, Tomray could not make its payments on the note and the lease and Tomasek therefore accepted that the business was failing. The Davises, however, did not accept this; they intervened in the operations of Taylor Rental Center and demanded various items of financial information. The Davises even paid a portion of the business's debts. In order to protect the investment, they eventually offered to buy back the business. Tomasek agreed and had his counsel assist him in reviewing the agreement drafted by the Davises' counsel. The parties planned to consummate the transfer on April 1, 2002, the start of the next fiscal year; unfortunately, negotiations failed because the parties could not agree on the terms.

Thereafter, according to the bankruptcy court's findings and Tomasek, the Davises locked Tomasek out of the building on March 28, 2002, ordered him to leave, changed the locks, and took possession of Tomray property secured by the security agreement, Tomray property not secured by the security agreement, and personal property of Tomasek. Furthermore, the record reflects that most of Tomray's corporate books were in the building at the time, with the exception of some accounting records held by Tomray's accountant, who coincidentally is the Davises' daughter; the majority of the records were electronically stored in a computer seized by the Davises.

Contrary to the findings of the bankruptcy court, the Davises argue to this court that Tomasek voluntarily relinquished the store and that Tomasek, not the Davises, took the computer containing the business records. Furthermore, the Davises argue that Tomasek continued pocketing funds from the business after the turnover, removing money from the cash drawer and charging various amounts via the credit card machine. They contend that when they entered the building on March 28, 2002,

4

it was seriously damaged,[2] and that certain equipment pledged by Tomasek as collateral for his loans was missing.  The Davises also assert that because Tomasek admitted that most of the damage was done by his employees, he is ultimately responsible.  Because of the above incidents, the Davises sold the business as a going concern in the summer of 2003 for about $315,000.

As a result of the financial troubles with Taylor Rental Center, Tomray filed a Chapter 7 petition on April 22, 2002; Tomasek filed the Tomray Schedules and Statement of Affairs.  Thereafter, on September 29, 2002, Tomasek personally filed a Chapter 7 petition; Tomasek filed his Schedules and Statement of Affairs.

At the creditors meeting in Tomasek's personal bankruptcy, counsel for the Davises asked Tomasek if he had an interest in a trust.  According to the bankruptcy court, Tomasek realized at that time that he may have an interest in his mother's trust, although he was unsure what kind.  He later learned from his father that his father is the primary beneficiary in Tomasek's mother's trust and that Tomasek has a contingent remainder.  Pursuant to this conversation, Tomasek amended his filings to indicate this contingent interest; he claims that he never saw or had possession of the trust document until the meeting.  The Davises, however, point out that Tomasek listed the trust as a creditor in the Tomray bankruptcy because Tomray borrowed money from the trust.

CMAP, through its attorney, filed a Proof of Claim on August 7, 2002, in the Tomray bankruptcy, claiming unpaid rent, damages to the building pursuant to the lease, loss and damage to collateral under the security agreement, a balance owed to Security Bank, money advanced to pay creditors of the business prior to March 28, 2002, and attorney and accounting fees, amounting to

---

[2]The damage alleged by the Davises includes broken windows, kicked in doors, knife marks on the walls, torn insulation, beer and trash on the floor, sheet rock damage, ruined carpet, fence damage, graffiti on the walls, broken locks and latches, etc.

$246,335.82. The trustee filed a no asset report on August 27, and the case was eventually closed on January 10, 2003.

Thereafter, CMAP filed a Proof of Claim in Tomasek's personal bankruptcy on October 25, 2002. The Proof of Claim includes an exhibit identical to the exhibit attached in the Tomray bankruptcy; the only difference is that it asserts that all moneys are due from Tomasek personally. Tomasek, obviously disagrees with this contention and asserts in his brief that when he signed all three documents, he believed he was acting on behalf of his soon-to-be-formed corporate entity, Tomray, with the knowledge and consent of CMAP and the Davises. Tomasek explains that he never intended to take on these liabilities personally. As a result, the trustee filed a no asset report, and the court discharged Tomasek's debts on October 20, 2003.

The Davises, not CMAP, filed the present adversary complaint on December 31, 2002, while the Tomasek bankruptcy was pending. They alleged that Tomasek had debts payable to them that should not be discharged. After trial, the bankruptcy court found for Tomasek, holding specifically that there was no evidence that Tomasek: (1) failed to provide financial records from which his true financial condition could be determined; (2) personally sold any property belonging to Tomray or CMAP; (3) personally damaged or converted any property belonging to Tomray or CMAP; (4) had a duty to account or, if he had such a duty, failed to account for the proceeds from the sale of equipment of Taylor Rental Center; or (5) personally damaged the building or real property, although they were in poor condition. It ultimately determined that the discharge of Tomasek's debts would stand.

The Davises appealed to the district court, which affirmed, briefly stating that it had reviewed the bankruptcy court's legal determinations de novo and its factual findings on a clearly erroneous

6

basis. The Davises now appeal to us, arguing that, (1) the bankruptcy court erred in finding the debt dischargeable under §§ 523(a)(4) and (6); and (2) the bankruptcy court erred in discharging the debt under §§ 727(a)(3) and (4). First and foremost, however, Tomesek asserts that the Davises do not have standing to bring these claims on appeal.

## II. DISCUSSION

### A. Standard of Review

This court reviews the bankruptcy court's findings of fact for clear error, so that the district court's findings must be upheld unless implausible in light of the entire record and "due regard shall be given to the opportunity of the bankruptcy court to judge the credibility of the witnesses." Fed. R. Bankr. P. § 8013. Strict application of this standard is necessary where the district court affirmed the bankruptcy court's findings of fact,[3] as it did here. *In re Niland*, 825 F.2d 801, 806 (5th Cir. 1987). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed.'" *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 574 (1985) (quoting *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 394-95 (1948)). "This standard plainly does not entitle a reviewing court to reverse the finding of the trier of fact simply because it is convinced that it would have decided the case differently." *Anderson*, 470 U.S. at 573.

### B. Standing

Tomasek asserts that the Davises do not have standing. The bankruptcy court recognized a potential lack of standing but concluded the following:

---

[3]The Davises assert in their brief that this case involves purely legal issues and therefore de novo review is appropriate. This case, however, turns on the facts; therefore clear error review is the applicable standard.

Any debts owed by Tomasek under the Note and Security Agreement appear to be owed to CMAP at the time this case was filed. CMAP's claims against Tomasek were purportedly assigned to the Davises after the bar date for filing an action to determine discharge and dischargeability. Therefore, the Davises' standing to assert the non-dischargeability of any debt arising under the Security Agreement is somewhat questionable. However, the Davises claim to be a creditor in various other respects, including as a Lessor, and will, for purposes of these findings and conclusions, be treated as a creditor.

We have considered the parties' arguments on standing and conclude that the bankruptcy court and district court correctly treated the Davises as creditors with standing.

C. 11 U.S.C. §§ 523 (a)(4) and (6)

Section 523(a)(4) excepts from discharge any debt "for fraud or defalcation while the debtor acted in a fiduciary capacity, embezzlement, or larceny." 11 U.S.C. § 523 (a)(4) (2000). Section 523 (a)(6) excepts from discharge any debt "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523 (a)(6) (2000).

On the § 523 (a)(4) claim, the bankruptcy court concluded that the Davises conceded that they had no claim for fraud, embezzlement, or larceny. Furthermore, it held that they had no claim for defalcation because a defalcation claim requires a fiduciary relationship between the debtor and creditor, of which no evidence existed. *In re Letterman Bros. Energy Sec. Litig.*, 799 F.2d 967, 975 (5th Cir.1986) (explaining that creditor-debtor relationship is not a fiduciary relationship).

The Davises argue, that § 523(a)(4) renders the debts nondischargeable because Tomasek committed larceny when he "sold equipment that was [the Davises'] collateral and failed to account for the proceeds." Tomasek explains that even if he did sell secured property without paying off the secured party, those actions, at most, amount to a breach of contract claim, which is not embezzlement or larceny. *In re Hofmann*, 144 B.R. 459, 464 (Bankr. D.N.D. 1992). Finally,

8

Tomasek asserts that the proceeds from the sales were used to run Tomray.

We agree with Tomasek and the bankruptcy and district courts, because Tomasek's actions do not amount to larceny. Furthermore, even if they did, the Davises, according to the record, waived the larceny argument in the bankruptcy court when they conceded that Tomasek did not commit larceny under the facts of the record.

On the § 523 (a)(6) claim, the Davises argue that Tomasek should be held liable under § 523(a)(6) because either Tomasek or Tomasek's employees willfully caused damage to the premises and equipment. They point to the lease and argue that Tomasek was responsible and therefore owes money for these damages.

The bankruptcy court, however, rejected the Davises' § 523 (a)(6) claim, explaining that, although the premises were damaged, Tomasek testified that he did not personally cause any of the damage and that the majority of the damage occurred during the ordinary daily use of the business. It specifically rejected the Davises' argument that Tomasek should be held responsible for damage allegedly caused by his employees, even if willful, explaining that courts overwhelmingly have rejected such vicarious liability under § 523(a)(6).[4] Furthermore, the bankruptcy court noted that there was no evidence that Tomasek's employees willfully caused damage to the premises. The court remarked

---

[4]As the bankruptcy court explained:

> Under § 523(a)(6), it is the debtor who must act in causing the willful and malicious injury to another or the property of another entity. It has been universally held that a person's willful and malicious actions cannot be imputed to another person or entity for the purpose of holding that debt nondischargeable under § 523(a)(6).

In re Bucak, 278 B.R. 488, 496 n.7 (Bankr. W.D. Tenn 2002); See also In re Miller, 196 B.R. 334 (Bankr. E.D. La. 1996).

9

that minimal damage to the rental property is inherent in a rental business and that there was no evidence that Tomasek personally damaged, lost, or stole any equipment. We conclude that the bankruptcy court's factual findings are not clearly erroneous. The record reflects that the evidence does not support the Davises' assertions; they did not meet their burden of proof. Therefore, we agree that Tomasek is neither personally nor vicariously liable under § 523(a)(6), as the evidence is insufficient to prove his or his employees' culpability.

D.  11 U.S.C. § 727 (a)(3) and (4)

Section 727(a)(3) allows the court to deny discharge to a debtor if he "has concealed, destroyed, mutilated, falsified, or failed to keep or preserve any recorded information, including books, documents, records, and papers, from which the debtor's financial condition or business transactions might be ascertained, unless such act or failure to act was justified under all of the circumstances of the case." 11 U.S.C. 727 (a)(3) (2000). Section 727 (a)(4) allows the court to deny discharge to a debtor if he

> knowingly and fraudulently, in or in connection with the case: (A) made a false oath or account; (B) presented or used a false claim; (C) gave, offered, received, or attempted to obtain money, property, or advantage, or a promise of money, property, or advantage, for acting or forbearing to act; or (D) withheld from an officer of the estate entitled to possession under this title, any recorded information, including books, documents, records, and papers, relating to the debtor's property or financial affairs.

11 U.S.C. 727 (a)(4) (2000).

Under § 727 (a)(3), the bankruptcy court found that Tomasek did not meet the requirements of denial of discharge under the statute; it emphasized that the Davises or Tomray's accountant had been in possession of all Tomray's computerized business records and some of Tomasek's personal records until two months before the conclusion of the trial in this case. Furthermore, the bankruptcy court noted that some courts hold that denial of discharge under § 727(a)(3) is limited to records of

10

the debtor, not a business he controls, and that there was no evidence that Tomasek kept inadequate personal records.

In response, the Davises reason in their brief, without citation, that because Tomasek did not explain the alleged loss in inventory value from 1995 to 2002, he must have failed to keep appropriate records and because Tomasek did not keep adequate records, his debt should not be discharged. The Davises also assert that Tomasek took one of the computers from the premises with him when he left the business, and that even if they did have his records, Tomasek could have asked them for the records, but did not.

We agree with the bankruptcy court's reasoning on this claim. Tomasek did not withhold records; the bankruptcy court found that he did not have possession of the business computer–which held his electronic business records. The Davises' allegation that Tomasek took a computer from the business is of no assistance to their argument because the record on appeal shows that this computer was Tomasek's personal computer; there is no evidence that it held any business data. Furthermore, the record does not reflect that Tomasek concealed, destroyed, or failed to keep any records; that Tomasek possessed his personal computer or could have requested his business records from the Davises is, as the bankruptcy court determined, irrelevant.

Under § 727 (a)(4), the Davises have the burden of proving that "(1) the debtor made a false statement under oath; (2) the statement was false; (3) the debtor knew the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement was material to the bankruptcy case." *In re Sholdra*, 249 F.3d 380, 382 (5th Cir. 2001). The bankruptcy court analyzed twenty-seven statements made by Tomasek under oath that the Davises allege to be false; it

11

determined that eight were false statements under oath.[5] Tomasek did not and does not dispute this on appeal, though he does provide an explanation for each point of error on his schedules raised by the Davises and cites *In re Mitchell*, 102 Fed. Appx. 860, 663 (5th Cir. 2004), as support for his contention that the number of errors is not dispositive in showing reckless disregard. The bankruptcy court agreed, holding that there was no evidence to suggest that Tomasek made any such statements with fraudulent intent. Therefore, it disallowed revocation of discharge. The bankruptcy court also noted that the parties agreed that the falsities related to items of trivial value, that inaccurate answers were often accurately disclosed elsewhere on the schedules, and that Tomasek's numerous other answers on the schedules were correct. The Davises disagree and devote most of their brief to this issue, restating the facts from their point of view and highlighting Tomasek's failure to disclose his interest in the trust. They argue that there "can come a point when the aggregate errors and omissions cross the line," and that Tomasek's "omissions and errors . . . clearly cross the line."

After reviewing the record, we do not find it necessary to discuss each alleged point of error raised by the Davises because, we agree that the bankruptcy court's factual findings are not clearly

---

[5]The record reflects that the bankruptcy court concluded, on page 23 of Findings of Fact and Conclusions of Law, that Tomasek made the following false statements on his schedules:

    a.  Original Schedule B, Item 2, failing to list the name and address of his bank.

    b.  Original Schedule B, Item 5, failing to list his DVDs, CDs, and books.

    c.  Original Schedule B, item 8, failing to list his 35 mm camera and his digital camera and their value.

    d.  Original Schedule B, item 19, failing to list his interest in his mother's trust.

    e.  Original Schedule F, failing to list his personal guaranty of a debt Tomray owed Kubota.

    f.  Original Schedule G, failing to list names and addresses of the landlords for his apartment and for the landlord of Zion church and failing to list his liability on the lease for the Taylor Rental Center.

    g.  Original Schedule H, failing to list Tomray Enterprises and the Davises as co-debtors of the business debts.

    h.  Amended Schedule B, same errors as on original Schedule B, except that his mother's trust was now listed.

erroneous. The bankruptcy court stated that it "believes the Debtor's explanation regarding how he came to list these items on his schedule," and noted that "[w]hile it would like to have every debtor's schedules be perfectly correct, the standard for obtaining a discharge is not perfection." We agree with the conclusion reached by the bankruptcy court. We hold that § 727 (a)(4) does not apply because there is no evidence that Tomasek knew the information was false, that he intended to make a fraudulent statement or that the statements made were material to this case.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the decisions of the bankruptcy and district courts, holding that Tomasek's debt is dischargeable.