In re Joseph T. AUSLEY and Sheila Ausley, Debtors.

Berketa Brown, Plaintiff,

v.

Joseph T. Ausley and Sheila Ausley, Defendants.

Bankruptcy No. 12–22503–PJD.
Adversary No. 12–00561.

United States Bankruptcy Court,
W.D. Tennessee.

Signed March 18, 2014.

David Drexler, Esq., Attorney for Plaintiff.

Linda K. Garner, Esq., Attorney for Defendants.

## MEMORANDUM OPINION FINDING DEBT TO BE NONDISCHARGEABLE PURSUANT TO 11 U.S.C. § 523(a)(6)

PAULETTE J. DELK, Bankruptcy Judge.

This matter comes before the court on Plaintiff's timely filed Complaint to Deny Dischargeability of Debt and For Judgment, heard on November 19, 2013. The court has reviewed the testimony from the hearing, the statements of counsel, and the record as a whole, and concludes that the judgment debt at issue is nondischargeable under the "willful and malicious" exception to discharge set forth in 11 U.S.C. § 523(a)(6). This matter is a core proceeding, 28 U.S.C. § 157(b)(2)(I) and (J), and this Memorandum Opinion shall serve as the Court's findings of fact and conclusions of law. FED. R. BANKR.P. 7052.

### ISSUE

The issue is whether the judgment debt owed to Plaintiff falls within the "willful and malicious" exception to discharge pursuant to § 523(a)(6) of the Bankruptcy Code.

## PROCEDURAL BACKGROUND AND FINDINGS OF FACT

Berketa Brown ("Brown"), the Plaintiff in this adversary proceeding, is a judgment creditor of the Debtors/Defendants, Joseph T. Ausley and Sheila Ausley ("the Ausleys"). The Ausleys' debt to Brown arises from a judgment entered in Brown's favor on February 17, 2010, in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis ("state court judgment"), where Brown, as Defendant/Counter–Plaintiff, sued the Ausleys for violation of the Tennessee Residential Landlord and Tenant Act § 66–28–101, et seq., specifically a violation of § 66–28–504 concerning Unlawful Ouster. The Ausleys commenced their Chapter 7 bankruptcy case on March 6, 2012, and Brown now seeks to have the judgment debt determined nondischargeable pursuant to § 523(a)(6) of the Bankruptcy Code. Section 523(a)(6) excepts from discharge debts "for willful and malicious injury by the debtor to another entity or to the property of another entity." 11 U.S.C. § 523(a)(6).

The facts underlying Brown's state court judgment against the Ausleys are briefly summarized as follows. On June 13, 2007, Judge John Donald in the Shelby County Court of General Sessions entered judgment for the Defendant/tenant, Brown, on a Complaint for Forcible Entry and Detainer filed by the Plaintiffs/Landlords, the Ausleys.[1] From the clear testimony of Brown and the very confused testimony of the Ausleys, all parties were present in Judge Donald's courtroom at the time of his ruling. Based on the testimony of Lisa Wimberly, a retired supervisor of the Shelby County General Sessions Court, Judge Donald's judgment was erroneously entered into the computer records of the Shelby County General Sessions Court as a judgment in favor of Plaintiffs (the Ausleys), rather than judgment for Defendant (Brown) as Judge Donald's handwritten record indicates. Based on the erroneous computer record of the judgment, the Ausleys were able to obtain a Writ of Possession on July 10, 2007, and with that Writ proceeded to evict Brown from the rental residence owned by the Ausleys. During the eviction process, which took place in the absence of Brown but in the presence of her children, one of Brown's children called her to let her know of the eviction, and she went to the Clerk's Office for the Shelby County General Sessions Court to contest the eviction. Brown spoke with Lisa Wimberly, and Ms. Wimberly determined that Judge Donald had indeed ruled in favor of Brown, and not the Ausleys, and that the Writ of Possession was issued in error.[2] Ms. Wimberly telephoned the officials at the rental home, and told them to stop the eviction. At the time of the telephone call, all of Brown's possessions had been removed from the home, and were outdoors on the sidewalk. Brown returned her possessions to the residence, and continued to live there for approximately three weeks after the aborted eviction.

The Ausleys then filed a Complaint for Forcible Entry and Detainer against Brown on July 20, 2007, also seeking $2,200 in damages. This time, judgment was entered in favor of the Ausleys permitting a Writ of Possession to enter, as well as a money judgment against Brown in the amount of $2,200.00. Brown timely appealed this judgment on August 17, 2007, and filed suit as Counter–Plaintiff

---

1. See Plaintiff's Exhibit # 3. Plaintiff's witness, Lisa Wimberly, retired supervisor, Shelby County General Sessions Court, also testified in bankruptcy court that the records show that Judge Donald entered judgment for Brown, the defendant in the case.

2. See Plaintiff's Exhibit # 4.

against the Ausleys in the Circuit Court of Tennessee for the 30th Judicial District at Memphis. Brown's appeal and Counter Complaint in the Circuit Court alleged that the Ausley's conduct violated T.C.A § 66–28–504 regarding Unlawful Ouster. Section 66–28–504 provides:

> If the landlord unlawfully removes or excludes the tenant from the premises or willfully diminishes services to the tenant by interrupting essential services as provided in the rental agreement to the tenant, the tenant may recover possession or terminate the rental agreement and, in either case, recover actual damages sustained by the tenant, and punitive damages when appropriate, plus a reasonable attorney's fee. If the rental agreement is terminated under this section, the landlord shall return all prepaid rent and security deposits.

TENN.CODE ANN. § 66–28–504 (2013). The appeal and counter suit were set for a joint trial on November 5, 2008, but neither the Ausleys nor their attorney appeared on that date. The trial was continued to July 9, 2009 and again to August 3, 2009, but the Ausleys and their attorney failed to appear on either of those dates. Each time that the trial was continued, the Ausleys were given additional notice of the next hearing date. When the Ausleys and their attorney failed to appear for the fourth trial date setting, the Circuit Court conducted a hearing, heard evidence provided by Brown, found that the Ausleys did unlawfully oust Brown from her residence, and ruled that the Ausleys were in violation of the Tennessee Residential Landlord and Tenant Act as set forth in T.C.A. § 66–28–504. The Circuit Court awarded Brown a judgment against the Ausleys in the amount of $104,000.00, which consisted of $26,350 real and actual damages from the loss of her personal property, $51,300 in punitive damages for the Ausleys' willful and malicious actions, and $26,350 in attorney's fees. The Circuit Court dismissed with prejudice, for lack of prosecution, the Ausley's Original Detainer Warrant filed in the General Sessions Court against Brown. *See* Collective Exh. 2 to the parties' Corrected Stipulation of Facts and Exhibits, styled Order Granting Damages and Judgment for the Counter–Plaintiff Berketa Brown and Suggestion of Diminution of Record, ¶ 4, entered in the Circuit Court lawsuit. The Circuit Court entered its judgment in favor of Brown on February 17, 2010.

The Ausleys then filed this Chapter 7 case on March 6, 2012. Brown filed a Complaint to Deny Dischargeability of Debt, asking this Court to find the entire judgment debt in the amount of $104,000, plus accrued interest[3], nondischargeable under § 523(a)(6). The Ausleys argue that the Circuit Court judgment against them is fundamentally unfair, and should be declared dischargeable. Both parties asked this court to conduct a hearing only on liability under § 523(a)(6), and to conduct a hearing on damages only if the Ausleys were held liable.

## CONCLUSIONS OF LAW

For the reasons discussed below, the court concludes that the Ausleys' actions constitute a willful and malicious injury under § 523(a)(6), and that the judgment debt of $104,000.00 is nondischargeable.

 Brown has not argued that the doctrine of collateral estoppel bars this Court from relitigating an issue already decided in the prior state court action be-

---

**3.** The Complaint alleges that $129,523.87 is now owed, due to the accrual of interest on the judgment. The Court does not determine the amount of interest accrued at this time, but leaves any amount of interest for the parties to determine.

tween these parties. This Court is, however, mindful of the direction of the Sixth Circuit in *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999), that bankruptcy courts apply collateral estoppel when "(1) the law of collateral estoppel in the state in which the issue was litigated would preclude relitigation of such issues, and (2) the issue was fully and fairly litigated in state court." (citations omitted). Even when the prior state court judgment was a default judgment, the Sixth Circuit's directive still applies, when the state would give a default judgment preclusive effect. *Dimmitt & Owens Fin., Inc. v. Calvert (In re Calvert)*, 105 F.3d 315, 322 (6th Cir.1997). The judgment in this case was entered by a state court in Tennessee. Under Tennessee law, a default judgment does not preclude a finding that the issue was actually litigated for collateral estoppel purposes. *Patterson v. Rockwell Int'l*, 665 S.W.2d 96, 101 (Tenn. 1984). When a default judgment is entered against a defendant, Tennessee law holds that the default judgment is conclusive as to all issues that are well pled and material to the decision. *Lawhorn v. Wellford*, 179 Tenn. 625, 168 S.W.2d 790, 792 (1943). The fact that this state court judgment was a default judgment does not bar this court from determining if the judgment should be given collateral estoppel effect.

■ In order for the collateral estoppel doctrine to apply to preclude relitigation of issues of law or fact under Tennessee law, this court must find:

1.) that the issue sought to be precluded is identical to the issue decided in the earlier suit;

2.) that the issue sought to be precluded was actually litigated and decided on its merits in the earlier lawsuit;

3.) that the judgment in the earlier suit has become final;

4.) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier suit; and

5.) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier suit to litigate the issue now sought to be precluded.

*Trinity Industries, Inc. v. McKinnon Bridge Co.*, 147 S.W.3d 225, 232–233 (Tenn.Ct.App.2003) (citations omitted).

■ Elements two through five have been met, since default judgments are held to satisfy the "actually litigated" element[4], the state court judgment became final in 2010, the Ausleys were parties to the prior litigation, and had a full and fair opportunity to litigate the issues based on the state court's continued notice to them of the continued trial dates. However, the issue sought to be precluded here: whether the Ausleys acted willfully and maliciously when they evicted Brown from the residence, is not identical to the issue before the state court. The issue before the state court was whether the Ausleys violated T.C.A. § 66–28–504. Because the state court could determine whether the Ausleys violated T.C.A. § 66–28–504 without finding that their actions were willful and malicious, the issues before the bankruptcy court and the state court are not identical. Thus, the collateral estoppel doctrine does not apply to preclude this court from determining the issue of liability under 11 U.S.C. § 523(a)(6).

■ In nondischargeability proceedings under 11 U.S.C. § 523, the creditor bears the burden of proof by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 291, 111 S.Ct. 654, 112

---

4. See discussion supra.

L.Ed.2d 755 (1991). Under § 523(a)(6), the creditor must prove that the debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity." This court is mindful that exceptions to discharge are to be narrowly construed in order "to promote the central purpose of the discharge relief for the *honest* but *unfortunate* debtor." *Meyers v. I.R.S.* (*In re Meyers*), 196 F.3d 622, 624 (6th Cir.1999) (emphasis supplied) (quotation and citation omitted).

Congress defined "willful" to be "deliberate or intentional," H.R.Rep. No. 595, 95th Cong. 1st Sess. 365 (1977), 1978 U.S.C.C.A.N. 5963, 6320, but failed to elaborate on the term "malicious," and courts have been divided on how that term should be interpreted. The Supreme Court addressed the issue in *Kawaauhau v. Geiger* (*In re Geiger*), 523 U.S. 57, 61, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), and has provided some guidance in determining how the terms "willful" and "malicious" are to be applied. The Court explained that the "word 'willful' in (a)(6) modifies the word 'injury' indicating that nondischargeability takes a deliberate or intentional *injury,* not merely a deliberate or intentional *act* that leads to injury." *Id.* at 64, 118 S.Ct. 974.

■ Subsequent to *Geiger,* the Circuits are split as to whether the "willful and malicious" requirements are to be addressed separately, or whether the § 523(a)(6) inquiry is an integrated test. One commentator has observed the following:

> A number of courts, including the U.S. Court of Appeals for the Fifth Circuit in *In re Miller,* [156 F.3d 598 (5th Cir. 1998)], have adopted an integrated test, holding that an injury is willful and malicious if the debtor intended to cause harm or if there is an objective substan-

tial certainty that his or her actions would lead to injury.

The U.S. Court of Appeals for the Sixth Circuit also has adopted an integrated test, but one that is somewhat more subjective than the Fifth Circuit's *Miller* standard. In *In re Markowitz,* [190 F.3d 455 (6th Cir.1999)], the Sixth Circuit ruled that a creditor must demonstrate that the debtor either (1) intended to cause injury to the creditor or to the creditor's property, or (2) engaged in an intentional act from which the debtor believed injury would be substantially certain to result. *Id.* at 464.

Howard B. Kleinberg, *When Does the Willful and Malicious Injury Exception to Discharge Apply to a Debt Stemming from a Conversion of Collateral?* 119 Banking L.J. 87 (2002). The *Markowitz* Court mandated that "that unless 'the actor desires to cause consequences of his act, or believes that the consequences are substantially certain to result from it,' Restatement (Second) of Torts § 8A, at 15 (1964), he has not committed a 'willful and malicious injury' as defined under § 523(a)(6)." *Markowitz,* 190 F.3d at 463.

Therefore, the Sixth Circuit test is subjective: "To find that a debtor intended to cause the consequences of his act or believed that the consequences were substantially certain to result from his act, it is necessary to look into the debtor's mind, subjectively." *Monsanto v. Wood* (*In re Wood*), 309 B.R. 745, 753 (Bankr. W.D.Tenn.2004).

■ Courts have accepted that it is seldom that a debtor will forthrightly state that he or she acted in a willful and malicious manner. So creditors may establish that debtors have acted willfully and maliciously by presenting circumstantial evidence, and courts may infer the requirements from the particular facts and circumstances surrounding the injury.

See Post Road Partners, LLC v. Walters (In re Walters), 359 B.R. 156, 161 (Bankr.E.D.Ky.2006), citing Call Federal Credit Union v. Sweeney (In re Sweeney), 264 B.R. 866, 871 (Bankr.W.D.Ky. 2001); Associated Bank, N.A. v. Graham (In re Graham), 472 B.R. 524, 530 (Bankr.W.D.Wisc.2012) (citing Weinberger v. AnchorBank, 2011 WL 679343 (E.D.Wis.)) (citing In re Geiger, supra); J & A Brelage, Inc. v. Jones (In re Jones), 276 B.R. 797, 802 (Bankr. N.D.Ohio 2001).

■ A debtor causes a willful injury when the debtor deliberately or intentionally causes the injury. The debtor must want to cause the consequences of his or her act, and must act with the actual intent to cause injury. Cash Am. Fin. Servs., Inc. v. Fox (In re Fox), 370 B.R. 104, 119 (6th Cir. BAP 2007). A malicious injury is one caused in conscious disregard of one's duties or without just cause or excuse. It "requires a showing of (1) a wrongful act; (2) done intentionally; (3) which necessarily causes injury; and (4) there is no just cause or excuse for the action." Marshall v. Dickson & Campbell LLC (In re Marshall), 2011 WL 249500 (S.D.Ohio) citing Vulcan Coals, Inc. v. Howard, 946 F.2d 1226, 1228 (6th Cir.1991). "The definition of 'malicious' for section 523(a)(6) purposes, is proven when a creditor shows that a debtor acted in conscious disregard of the rights of others, without just cause or excuse." River View Land Co., Inc. v. Bucak (In re Bucak), 278 B.R. 488, 493 (Bankr.W.D.Tenn.2002) (citations omitted).

■ The evidence taken as a whole establishes that the Ausleys deliberately caused harm to Brown when they took the affirmative step of requesting that a writ of possession be issued on Judge Donald's order. The writ of possession would not have been issued, and Brown would not have had her possessions removed from the rental home, if the Ausleys had not asked to have the writ issued. This act satisfies the willful injury requirement of § 523(a)(6). The willful act was causing a writ of possession to be issued which they knew, in fact hoped, would cause Brown to be evicted from the rental home.

The evidence also established that the Ausleys committed a malicious injury. They committed a wrongful act by violating the order of the state court. Although Judge Donald had ruled in favor of Brown in open court, and in the presence of the Ausleys and Brown, the Ausleys intentionally chose to take advantage of a computer error in conscious and reckless disregard of Brown's legal rights. The fact that a computer error allowed the writ of possession to be issued was not "just cause or excuse." The evidence is convincing that the Ausleys were well aware that they were not awarded judgment in the eviction action, yet they chose to take full advantage of a computer error that the Ausleys knew was contrary to Judge Donald's oral and written ruling. The Ausleys knew that their act would harm Brown, and they proceeded in the face of that knowledge. The surrounding facts and circumstances of this case demonstrate that the Ausleys are not, in their actions with Brown, the "honest but unfortunate debtor" for whom the exceptions to discharge are to be narrowly construed.

In consideration of the foregoing, it is the opinion of this court that Brown has carried her burden of proving by a preponderance of the evidence all of the required elements for nondischargeability under § 523(a)(6). The Ausleys have failed to present credible evidence of just cause or excuse for this willful injury.

■ Although the parties have requested that the court hear only the liability issue under 11 U.S.C. § 523(a)(6), re-

serving the damages issue pending the outcome of the liability issue, this court, *sua sponte,* has determined that it is precluded from relitigating the damages issue. The state court has already determined that the unlawful ouster of Brown by the Ausleys, which this court has determined to be a willful and malicious injury, caused Brown to suffer actual and punitive damages, as well as attorney fees in the amount of $104,000.00.

 When a prior state court judgment calculates a debt and that debt is at issue in a dischargeability proceeding, the bankruptcy court cannot issue its own judgment on the debt to replace the state court judgment. The bankruptcy court is only authorized to determine whether or not that state court judgment is dischargeable. *See In re Heckert,* 272 F.3d 253, 257 (4th Cir.2001). Once the issue of the willful and malicious nature of the injury is determined by the bankruptcy court, the state court judgment itself is res judicata as to the amount of the judgment. *See In re Comer,* 723 F.2d 737, 740 (9th Cir.1984) (res judicata barred the bankruptcy court from looking behind the default judgment to determine the actual amount of the obligation.); *In re Daghighfekr,* 161 B.R. 685 (9th Cir. BAP 1993).

When a state court issues a judgment in favor of a party in a specific amount, the amount of damages is determined, but issues related to dischargeability are not necessarily determined. *Sung Ho Cha v. Rappaport (In re Sung Ho Cha),* 483 B.R. 547, 553 (9th Cir. BAP 2012). The state court here heard evidence from Brown, after which it determined the damages that Brown suffered as a result of the Ausleys' unlawful ouster. This state court judgment is binding on this court as to the amount.

The Ausleys allowed the time to appeal the state court judgment to expire without taking any steps to appeal the judgment. That judgment is now final, and should be accorded the full faith and credit of this court, as to the damages issue. This accords with 28 U.S.C. § 1738, which directs federal courts to give "full faith and credit" to a state court judgment to the same degree as that judgment would be given under the law of the state in which the judgment is rendered. *Clark v. Springhart (In re Springhart),* 450 B.R. 725, 729 (Bankr.S.D.Ohio 2011). Tennessee gives preclusive effect to state court default judgments. *See Patterson,* 665 S.W.2d at 101; *Lawhorn v. Wellford,* 179 Tenn. 625, 168 S.W.2d 790, 792 (1943). So this court will enter an order finding the $104,000.00 plus interest as awarded by the state court to be a nondischargeable judgment under 11 U.S.C. § 523(a)(6).