RECOMMENDED FOR FULL-TEXT PUBLICATION
*File Name:* 19b0001p.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

In re:  DEAN MAYNARD BOLAND,

*Debtor.*

_____

JANE DOE; JANE ROE,

*Plaintiffs-Appellants,*

*v.*

DEAN MAYNARD BOLAND,

*Defendant-Appellee.*

No. 17-8019

On Appeal from the United States Bankruptcy Court
for the Northern District of Ohio at Cleveland.
No. 16-10250—Jessica E. Price Smith, Judge.

Argued:  May 8, 2018

Decided and Filed:  February 13, 2019

Before:  BUCHANAN, DALES, and HUMPHREY, Bankruptcy Appellate Panel Judges.

_____

## COUNSEL

**ARGUED:**  Jonathan E. Rosenbaum, Elyria, Ohio, for Appellants.  Stephen D. Hobt, Cleveland, Ohio, for Appellee.  **ON BRIEF:**  Jonathan E. Rosenbaum, Elyria, Ohio, for Appellants. Stephen D. Hobt, Cleveland, Ohio, for Appellee.

HUMPHREY, J., filed the opinion of the Bankruptcy Appellate Panel in which BUCHANAN, J., joined. DALES, J. (pp. 27–28), filed a separate opinion concurring in the result.

---

**OPINION**

---

GUY R. HUMPHREY, Bankruptcy Appellate Panel Judge. Appellants, Jane Doe and Jane Roe, appeal a determination of the bankruptcy court that a civil judgment for statutory damages awarded pursuant to 18 U.S.C. § 2255 is dischargeable because Appellants failed to meet their burden under 11 U.S.C. § 523(a)(6).

## I.  ISSUES ON APPEAL

The issues Appellants raised are:

1.  Whether the bankruptcy court erred when it discharged damages imposed upon Debtor pursuant to 18 U.S.C. § 2255 as a penalty for committing criminal conduct prohibited by 18 U.S.C. § 2252A by finding that Debtor was not substantially certain that he would injure the two minor Plaintiffs when he morphed their images into child pornography for public display as [court] exhibits [in criminal cases].

2.  Whether the Doctrine of Collateral Estoppel precluded Debtor from denying in an adversary proceeding that he was substantially certain his actions would cause injury because it was determined . . . in prior litigation between identical parties.

Statement of Issues Presented for Appeal, Adv. No. 16-01058 ECF No. 53.

As will be explained, the majority finds that the bankruptcy court did not err in determining that collateral estoppel did not apply on the issue of whether debtor Dean Boland intended to injure the Appellants since intent to injure was not actually litigated or necessary to the outcome of the prior federal litigation.  However, the Panel concludes that the stipulations Boland made through his Pretrial Diversion Agreement and the decisions rendered by the United States District Court for the Northern District of Ohio and the Sixth Circuit Court of Appeals on the issue of his civil liability to Appellants established as a matter of law that Boland knowingly created and possessed pornographic images involving images of real children.  Further, because the bankruptcy court misapprehended the nature of the harm the Appellants suffered, the Panel holds that the bankruptcy court made clearly erroneous findings as to Boland's intent to harm. The bankruptcy court did not consider the legal injury suffered by the Appellants as a result of

the invasion of their privacy and reputational interests.  Finally, the Panel concludes that Boland acted without justification or excuse thereby maliciously injuring Appellants within the meaning of 11 U.S.C. § 523(a)(6).

## II.  JURISDICTION AND STANDARD OF REVIEW

The Bankruptcy Appellate Panel of the Sixth Circuit has jurisdiction to decide this appeal.  The United States District Court for the Northern District of Ohio has authorized appeals to the Panel, and no party has timely filed to have this appeal heard by the district court. 28 U.S.C. §§ 158(b)(6), (c)(1).  A final order of the bankruptcy court may be appealed as of right.  28 U.S.C. § 158(a)(1).  For the purpose of an appeal, a final order is one that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Midland Asphalt Corp. v. U.S.*, 489 U.S. 794, 798, 109 S. Ct. 1494, 1497 (1989) (citations and internal quotations marks omitted). A determination of dischargeability is a final order.  *Trudel v. United States Dep't of Educ.* (*In re Trudel*), 514 B.R. 219, 222 (B.A.P. 6th Cir. 2014).  *See also Ritzen Grp., Inc. v. Jackson Masonry, LLC* (*In re Jackson Masonry, LLC*), 906 F.3d 494, 500 (6th Cir. 2018) (quoting *Bullard v. Blue Hills Bank*, U.S., 135 S. Ct. 1686, 1694 (2015) (adversary proceedings are "'essentially full civil lawsuits carried out under the umbrella of the bankruptcy case[.]'").

A determination of the dischargeability of a debt presents mixed questions of law and fact. *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 196 (B.A.P. 6th Cir. 2014). The appellate court "must break it down into its constituent parts and apply the appropriate standard of review for each part."  *Id.* (citing *Bank of Montreal v. Official Comm. of Unsecured Creditors (In re Am. HomePatient, Inc., Inc.)*, 420 F.3d 559, 563 (6th Cir. 2005) (citations omitted)).  Legal determinations are reviewed de novo and factual findings are reviewed under the clearly erroneous standard.  *Bradley*, 507 B.R. at 196. "Mixed questions are not all alike."  *U.S. Bank N.A., Trustee ex rel. CWCapital Asset Mgmt. v. Village at Lakeridge, LLC*, U.S., 138 S. Ct. 960, 967 (2018). "[T]he standard of review for a mixed question all depends—on whether answering it entails primarily legal or factual work." *Id.*

"Under a *de novo* standard of review, the reviewing court decides an issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (B.A.P. 6th Cir. 2007) (citation omitted). Essentially, the reviewing court decides the issue "as if it had not been heard before." *Mktg. & Creative Sols., Inc. v. Scripps Howard Broad. Co. (In re Mktg. & Creative Sols., Inc.),* 338 B.R. 300, 302 (B.A.P. 6th Cir. 2006) (citation omitted). "No deference is given to the trial court's conclusions of law." *Id.* A factual finding "is clearly erroneous when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Bradley*, 507 B.R. at 196 (quoting *Riverview Trenton R.R. Co. v. DSC, Ltd. (In re DSC, Ltd.)*, 486 F.3d 940, 944 (6th Cir. 2007) (internal quotation marks and citation omitted)). If the trial court's factual conclusion is "plausible in light of the record viewed in its entirety, the court of appeals may not reverse it . . . ." *Anderson v. City of Bessemer City*, 470 U.S. 564, 574, 105 S. Ct. 1504, 1511 (1985). Further, the appellate court cannot find clear error "[w]here there are two permissible views of the evidence," even if the appellate court weighs the evidence differently. *King v. Zamiara*, 680 F.3d 686, 694 (6th Cir. 2012) (citing *Beaven v. U.S. Dep't of Justice*, 622 F.3d 540, 556 (6th Cir. 2010) (citation omitted)).

## III. FACTS

Dean Boland, now known as Jack Boland, a lawyer licensed in Ohio, was an expert witness and defense counsel for criminal defendants charged in federal and state child pornography cases. His expertise was to demonstrate that pornographic images may be manipulated or altered to appear that minors were engaged in sexual conduct when they were not. To demonstrate this point, Boland purchased innocent images of minors from web pages that sold stock photos and included the images of those minors in pornographic images by altering or "morphing" the images. This type of expert testimony was apparently considered important because the defendants in these criminal cases argued they did not knowingly view or possess child pornography.

Between February 2004 and March 15, 2004, Boland downloaded innocent images of minors from two stock photo websites. Those photos were manipulated and included in images of sexual acts. Boland then displayed "before and after" versions of the images in criminal proceedings and opined about the use of computer technology to alter such images.

In 2004, an issue was raised while Boland was testifying as an expert witness in the criminal case of *United States v. Shreck* in the United States District Court for the Northern District of Oklahoma as to whether Boland committed a crime in creating and displaying these images of child pornography. Boland was instructed by the judge presiding over that case to delete the images from his computer. While Boland deleted the images from his computer, he did not permanently remove the images from his computer. Apparently fearing that he may be prosecuted in the Northern District of Ohio upon his return to Ohio if he flew back with the images on his computer, Boland shipped his computer by Federal Express to his mother in Ohio.

As a result of an investigation and a negotiation between Boland and the United States Attorney, on February 5, 2007, Boland voluntarily entered into a Pre-Trial Diversion Agreement (the "Diversion Agreement")[1] in the United States District Court for the Northern District of Ohio. The Diversion Agreement stated:

---

[1]"Pretrial Diversion is a voluntary program that provides an alternative to prosecution for an individual selected for placement in a program of supervision administered by a pretrial services or probation office. The offender who is selected for pretrial diversion enters into a contract with the U.S. attorney's office, pledging to meet certain conditions and to refrain from criminal activity for a specified period of time. Because participation is voluntary, persons may decline to enter the program and instead exercise their right to proceed with a trial on the charges against them." Thomas Ulrich, *Pretrial Diversion in the Federal Court System*, 66-Dec. Fed. Probation 30 (2002).

It appearing that you, Dean M. Boland, committed an offense against the United States from on or about March 16, 2004 through April 1, 2004, in violation of Title 18, United States Code, Section 2252A(a)(5)(B),[2] in that you did knowingly possess a computer and computer disks that contained images of child pornography, as defined in Title 18, United States Code, Section 2256(8),[3] to wit, visual depictions created, adopted and modified to appear that Jane Doe 1, Jane Doe 2, Jane Doe 3, and Jane Doe 4, each a minor child, whose identity is known to the United States Attorney's Office . . . was engaging in sexually explicit conduct, and which child pornography was produced using materials that had been shipped and transported in interstate and foreign commerce by any means including by computer.

Pre-Trial Diversion Agreement ("Trial Ex. 1") at 1-2, Adv. No. 16-01058 ECF No. 42-2 (footnotes added).[4]  A stipulation of facts was entered into on April 5, 2007 between Boland and the United States Attorney as part of the Diversion Agreement:

---

[2]Section 2252A(a)(5)(B) provides that:

(a)  Any person who—

. . .

(5) either—

(A) . . .

(B) knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]

. . .

shall be punished as provided in subsection (b).

18 U.S.C. § 2252A(a)(5)(B).

[3]"[C]hild pornography" means any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

18 U.S.C. § 2256(8).

[4]Appellants' trial exhibits were admitted without objection and are contained within ECF No. 42 on the adversary docket.  All references in this decision to trial exhibits are to the exhibits docketed at No. 42 and cite the

1. Between February, 2004, and March 15, 2004, Dean M. Boland (Boland) connected to the Internet from his home and office in the Northern District of Ohio. During that time period, and while connected to the Internet, Boland downloaded at least four (4) images, from the Internet, depicting four (4) real, identifiable minors in innocent poses. Boland knew or should have known that such images depicted real, identifiable minors. Boland downloaded two (2) such images from Istockphoto.com, a website located in Canada. Boland downloaded two (2) such image from websites hosted by Webe web, located in the State of Florida.

2. Boland digitally manipulated such images and combined them with other images to create a series of visual depictions. Such visual depictions were created, by Boland, to appear that each of the four (4) real, identifiable minors engaged in sexually explicit conduct.

3. Boland created and used these visual depictions in his capacity as an attorney and/or witness in a variety of criminal cases in several different courts. Between March, 2004 and January, 2005, Boland transported such visual depictions to, and/or displayed such visual depictions in courts in Summit, Columbiana, Hamilton and Warren Counties, in the State of Ohio, as well as in U.S. District Court in Tulsa, Oklahoma.

*Id.* at 9. In addition, Boland was required to issue a Public Statement in the Cleveland Bar Journal that was incorporated by reference into the Diversion Agreement. Boland stated that:

> In a previous issue of the Cleveland Bar Journal, as well as in certain articles published in the Plain Dealer and the Columbus Dispatch, I have made certain statements regarding a federal investigation surrounding my creation and use, in court, of certain digital images.
>
> In preparation for my testimony, as an expert witness on behalf of defendants, in child pornography cases in several counties in Ohio as well as Federal District Court in Tulsa Oklahoma, I created a series of trial exhibits. I downloaded images, from the Internet, depicting four minors in innocent poses. There was nothing about these images to suggest that they were not real identifiable children and I now know that they were in fact real. I then digitally manipulated such images and combined them with images depicting sexual conduct to create a series of visual depictions. Such visual depictions were created, by me, to appear that each of the four children was engaged in sexually explicit conduct. Despite my good faith belief that my actions taken in my capacity as an expert witness were appropriate under the circumstances, I do recognize that such images violate federal law.

---

exhibit numbers used at trial (e.g., Trial Ex. 1.) Exhibits 8, 9, and 10, however, are court decisions and this decision refers to them by citing the decisions, rather than the exhibits. Boland did not seek admission of any exhibits.

> I created the images solely for use in court, and indeed, only used the images in the course of my testimony as an expert witness. While the Ohio Revised Code includes an exception in its child pornography statutes for material used for a judicial purpose, the United States Code contains no such statutory exception. While I do not agree with the law and feel that an exception for judicial purposes is constitutionally mandated, current federal law contains no such exception. I acknowledge that federal authorities based upon a good faith belief, acted reasonably in their effort to enforce federal criminal law and was therefore, wrong for making disparaging comments about the involved investigators and prosecutors. They did act appropriately in their enforcement of federal criminal laws and the protection of the children depicted. I also realize that while I only used the visual depictions in my efforts to educate judges and juries as to the issues surrounding virtual child pornography, it is wrong to do so with the images of innocent children. Believing that all images were to be utilized in court without further exposure or distribution, it was never my intention to harm any child. Accordingly, I apologize to each child and their respective parents and/or guardians for any embarrassment or harm they suffered from the public dissemination of this material.

*Id.* at 10. The Diversion Agreement placed certain requirements on Boland but did not impose any damages. *Id.* at 3-6.

In September 2007 two of the minors, depicted in the sexual images Boland created, sued him under 18 U.S.C. § 2252A(f), which provides civil damages to a person aggrieved due to the conduct prohibited in 18 U.S.C. § 2252A(a) or (b) or 18 U.S.C. § 1466A. Section 2255(a) of Title 18 further provides that a minor victim of a § 2252A violation is entitled to actual damages which shall not be less than $150,000 for each victim.

Initially, the district court determined that the liability under these facts could raise Sixth Amendment right to counsel issues, would be unfair in that Boland created the images under a federal court directive in Oklahoma, and raised comity issues with the Ohio state courts since Ohio provided a statutory exception for a bona fide judicial purpose. *Lora v. Boland*, No. 1:07 CV 2787, 2009 WL 2901306 (N.D. Ohio Sept. 1, 2009). The Sixth Circuit reversed and remanded, finding no exception for expert witnesses and left any constitutional issues for the district court to resolve. *Doe v. Boland*, 630 F.3d 491 (6th Cir. 2011).

Upon remand, the parties agreed to brief the following legal questions on summary judgment:

> [W]hether any of the Plaintiffs are 'persons aggrieved' entitling them to monetary damages under § 2252A(f); whether the minor Plaintiffs suffered 'personal injury' under § 2255 as a result of the criminal violations; whether the definition of child pornography in § 2256(8)(c) violates the First Amendment; and whether the application of the federal child pornography statutes to an expert witness in Boland's circumstances violates the Sixth Amendment right to effective counsel.

*Lora v. Boland*, 825 F. Supp. 2d 905, 907 (N.D. Ohio 2011).

On summary judgment, the district court determined that the Appellants suffered personal injury and were persons aggrieved under 18 U.S.C. § 2255(a).[5] The court then turned to the constitutional issues. The district court noted that while the summary judgment motion was pending before him, Boland filed a separate lawsuit for declaratory judgment and injunctive relief against the United States Attorney General, which was assigned to another district court judge. In that complaint, Boland argued that Ohio defense counsel and expert witnesses face criminal and civil liability for actions similar to Boland's and such potential liability was a violation of the First Amendment and the fear of liability and federal prosecution deprived Ohio citizens of the Sixth Amendment right to a fair trial. The district court in the parallel case on the Constitutional issues granted the United States' Motion to Dismiss. *Boland v. Holder*, 1:09 CV 1614, 2010 WL 3860996 (N.D. Ohio Sept. 30, 2010), *aff'd*, 682 F.3d 531 (6th Cir. 2012). The decision concluded that (i) the images Boland created were not protected by the First Amendment and (ii) requiring counsel and expert witnesses to comply with the law does not deprive defendants of a fair trial under the Sixth Amendment.

Informed by that decision as well as his independent analysis, the judge in the statutory damages case found, as many cases had before, that "'morphed' child pornography is not protected speech[.]" *Boland*, 825 F. Supp. 2d at 912. Additionally, the district judge noted that an expert witness could make this same point without victimizing minors, and he rejected the argument that these restrictions amount to a denial of the Sixth Amendment right to counsel. *Id.* at 912-13. The court awarded damages of $300,000, $150,000 for each victim. Upon a second

---

[5]The parties stipulated that the Appellants had no present knowledge of the harm. Trial Ex. 12.

appeal to the Sixth Circuit, the district court's decision regarding statutory damages was affirmed. *Doe v. Boland*, 698 F.3d 877 (6th Cir. 2012), *cert. denied*, 570 U.S. 904, 133 S. Ct. 2825 (2013).

Boland subsequently filed a Chapter 7 bankruptcy petition in the Bankruptcy Court for the Northern District of Ohio. Appellants filed an adversary proceeding, asserting the damages awarded under 18 U.S.C. § 2252A(f) gave rise to a non-dischargeable debt for willful and malicious injury under 11 U.S.C. § 523(a)(6). Prior to trial, Appellants filed a Motion in Limine seeking an order "preventing [Boland] from denying or offering evidence to support the denial of the facts that he 1) knowingly morphed the innocent images of two real and identifiable children into child pornography . . . and 2) was substantially certain that he would cause injury to the plaintiffs when he morphed their images into child pornography." Pls' Mot. in Lim. at 1, Adv. No. 16-01058 ECF No. 14. Appellants argued these issues had previously been determined in the civil damages action. The bankruptcy court granted the first part of the Motion in Limine, determining that those findings were previously made in order to impose liability under 18 U.S.C. § 2252A(f). The bankruptcy court denied the second part of the Motion in Limine seeking a determination as a matter of law that Boland was substantially certain that he would cause injury to the children and determined that the issue to be tried was whether Boland intended to injure the children in creating and using the morphed images:

> The second request of the Motion in Limine sought to prevent Mr. Boland from denying that he "was substantially certain that he would cause injury to the plaintiffs when he morphed their images into child pornography . . . ." There is nothing in either the Diversion Agreement or the District Court opinion regarding the intent to injure. Since the issue of intent to injure was not fully and fairly litigated in the prior proceeding and the issue of intent was not necessary to the judgment, the second request of the Plaintiffs' Motion in Limine was denied.
>
> **Accordingly, the only issue in this trial is intent to injure . . . .**

*Doe v. Boland* (*In re Boland*), Adv. No. 16-1058, 2017 WL 2312854, at *1-2 (Bankr. S.D. Ohio May 26, 2017) (emphasis added).

The trial occurred on May 10, 2016. There were three witnesses.

Charles Sullivan, Special Agent with the Federal Bureau of Investigation testified about the Boland investigation. Sullivan learned that Boland took "innocent G-rated pictures of children, and digitally manipulated those images to appear as if those children were engaged in sexual activity." Tr. 12:20-23, May 10, 2017, Adv. No. 16-01058 ECF No. 54.[6] Sullivan obtained a search warrant for Boland, his residence, and his vehicle. After executing the warrant, Sullivan found digital media with pornographic images.

Sullivan testified that when Boland testified as a defense expert witness in a federal criminal proceeding in Oklahoma and used the altered images for demonstrative purposes, "the prosecution became concerned that what he had done in court may have violated federal law, and the – I believe it was the Judge at that time ordered him at the end of that hearing to delete the images that he had just shown in court." Tr. 19:4-9.

Boland, following only the strict letter of the Judge's instructions, did not destroy the images, but did delete them from the computer he had at the trial. As Sullivan explains:

> I interviewed an Assistant County Prosecutor . . . that had attended a continuing legal education seminar, of which Mr. Boland was presenting. And in interviewing the prosecutor, Mr. Boland had at that time joked about the Judge ordering him to purge his – purge these pictures, and joking that, you know, I deleted them by hitting the delete button, kind of mocking the Judge, knowing that just deleting them that way didn't purge them from his system.

Tr.19:20-20:5. Sullivan testified Boland used one picture in a subsequent criminal trial and two pictures in another, both in Ohio state court proceedings. Tr. 20:9-13.

In addition, Michael A. Sullivan, an Assistant United States Attorney for the Northern District of Ohio, testified that during the civil litigation Boland denied, during discovery, that the victims in the civil case were the same as referenced in the Diversion Agreement. Boland filed amended discovery responses because such a position was in contradiction of the Diversion Agreement and could have voided its terms.

The only other witness was Boland. Boland testified about his résumé, which was up-to-date for the time the relevant events occurred. See Tr. Ex. 5. Boland explained that he was aware

---

[6]All transcript references are to the May 10, 2017 hearing.

of the criminal statutes related to damages involving child pornography and prohibited acts. He was also "aware of the technological aspects" including "the creation and storing electronically of child pornography." Tr. 50:20-24. His field of expertise included "whether you could recognize real child pornography from virtually created child pornography[.]" Tr. 51:24-53:1. He wrote nine articles on this topic.

Boland testified in the bankruptcy court as to his expert testimony provided in the *Shreck* case. During the hearing or trial, but following Boland's testimony in *Shreck*, the United States Attorney in Oklahoma raised concern about whether Boland may have violated "certain criminal child pornography statutes." Tr. 52:24-5:13. Boland testified that:

> The Judge admonished me because I left the witness stand and communicated with defense counsel my concern that the prosecutors were preparing to arrest me in association with my testimony that day. So the defense attorneys . . . asked that the Court give me an admonishment on the record to protect me from potential action by the prosecutors. Then the Court, in fact, did that admonishment while noting to the prosecutors that my testimony in that case was I had no knowledge whether any of the individuals were even real people, much less their identity, and therefore the Court stated there's no way he violated the law and it would be Orwellian to arrest him after creating these exhibits that I asked him to come here and create.

Tr. 53:13-54:2.[7] As noted, Boland deleted those images from his computer as requested by the judge; however, he subsequently answered questions about those same images in other cases,

---

[7]The Sixth Circuit describes those events somewhat differently:

> After Boland had finished testifying in the *Shreck* case and after the prosecutors had raised concerns about the legality of Boland's testimony, it is true, the district court judge said that the images were "prepared expressly at court order." But that statement cannot change what happened. Boland had already violated § 2252A(a) before he stepped into the courtroom, and at no point before the hearing had the judge given him permission to create and possess new child pornography. All the judge said before the hearing was: "Defendant's expert should be prepared to address [the topic of virtual pornography] with information regarding financial costs of producing virtual images, the amount of time needed to produce an image, as well as the skill level required in order to achieve results which can pass for 'real' images." Perhaps appreciating the point, the same court later said (through a different judge; the first one retired) that Boland had no right to possess the images. The court held that Boland, as Shreck's counsel, "can sufficiently make [his] arguments and points relating to the ease of creating digital images that are indistinguishable from actual images, . . . without creating images that depict minors in sexually explicit situations." In the last analysis, this simply is not the case Boland claims it is: that of one federal court authorizing him to do something and of another federal court punishing him for it.

*Boland*, 630 F.3d at 497 (citations omitted).

describing the images as having been "previously admitted as sealed court records." Tr. 54:23. Boland testified this was not him using the images but instead answering questions after the images were displayed by the prosecutor. Tr. 54:9-55:2, 65:6-8. Boland also repeated his testimony that he did not know these images downloaded from the internet were images of real children. Boland was also questioned about whether the images he downloaded were "obviously altered." Tr. 76:13. Boland agreed that the images were not altered in an apparent manner, such as by replacing a building column with a human leg. *Id.* Boland did not point to any noticeable alteration but stated that he could not know for sure because he did not create the images of the minors. *Id.* Boland did admit in discovery, consistent with the Diversion Agreement, one of the images he created "appeared to depict an actual minor." Trial Ex. 2 at 10 (Admis. 7).

Boland testified repeatedly that he did not know what generated law enforcement's concern except that the word "crime" was used and he did not know if that was because real children may have been used in his created images. Nevertheless, Boland did acknowledge that he sent his computer by Federal Express to his mother because of his concern about whether his actions would be interpreted, erroneously in his view, as unlawful. Despite the resolution of the issue in Oklahoma, he did not know if the Cleveland FBI or the United States Attorney's Office in Cleveland might conclude he had violated the law.

He did not inform anyone associated with the Ohio criminal cases about the possible law enforcement concerns raised in Oklahoma. Boland stated that he only testified as an expert in Ohio because he believed Ohio explicitly authorized it by statute. Boland also testified he had no legal obligation to determine if the downloaded pictures of the minors were real.

Following the trial, the bankruptcy court determined that the judgment was dischargeable because Appellants failed to meet their burden under § 523(a)(6) and entered judgment in favor of Boland in an opinion and order entered May 26, 2017 and amended on July 5, 2017. *See Doe v. Boland* (*In re Boland*), Adv. No. 16-1058, 2017 WL 2312854 (Bankr. S.D. Ohio May 26, 2017); Am. Mem. of Op. & Order, Adv. No. 16-01058 ECF No. 49.[8]

---

[8]The amended decision is identical, except correcting a reference in the original decision to Boland filing a Chapter 13. He filed a Chapter 7.

With respect to the trial, the bankruptcy court interpreted the evidence as mostly addressing the intentional act of creating the images, and not Boland's intent to injure the children. The court noted that even if Boland "should have known" the consequences of his actions, the debt would be dischargeable because the standard for determining willfulness in the Sixth Circuit is subjective.

The bankruptcy court focused on Boland's motivation for his actions as an expert. The decision stated that Boland only created these images as a consultant and expert witness. The court noted that the depictions which Boland created from the minors' images were only displayed in court and appeared to give significance to Boland's lack of control over the images during the Ohio criminal proceedings that occurred after the *Shreck* trial in Oklahoma. The court also addressed the Appellants' argument that, following his testimony in the *Shreck* case, Boland was on fair notice as to the possible criminality of his actions. The bankruptcy court commented that Boland's testimony that the images were in sealed court records and out of Boland's control was undisputed. The court gave significant weight to Boland's statement that he did not know if the innocent images purchased on the internet were real children.

The court determined that Jane Doe and Jane Roe failed to establish the necessary intent and, therefore, failed to meet their burden to show Boland commited a willful injury within the meaning of § 523(a)(6):

> There was no evidence offered by Plaintiffs contradicting Mr. Boland's stated reason for why he downloaded innocent images of what appeared to be minors and altered them to be used in courtroom demonstrations. There was also no evidence offered by the Plaintiffs demonstrating that Mr. Boland actually intended harm to the Plaintiffs, or knew it was virtually certain to occur.

*Boland*, 2017 WL 2312854 at *3. The court did not address the element of malice.

## IV.  ANALYSIS

### A.    Dischargeability Under 11 U.S.C. § 523(a)(6)

The Bankruptcy Code does not discharge an individual's debt that a creditor can prove was "for willful and malicious injury by the debtor to another entity or to the property of another entity[.]"  11 U.S.C. § 523(a)(6).  To be "willful," the Supreme Court decided that the actor

"intend the *consequences* of an act, not simply the act itself." *Kawaauhau v. Geiger*, 523 U.S. 57, 61-62, 118 S. Ct. 974, 977 (1998) (citation omitted). In finding that the actor must intend the injury, rather than merely intending an act that leads to injury, the Court held that "debts arising from recklessly or negligently inflicted injuries do not fall within the compass of § 523(a)(6)." *Id.* at 64. In so holding, the Supreme Court recognized that "[t]he (a)(6) formulation triggers in the lawyer's mind the category 'intentional torts,' as distinguished from negligent or reckless torts." *Id.* at 61. *See Kennedy v. Mustaine* (*In re Kennedy*), 249 F.3d 576, 580 (6th Cir. 2001). *See also Yeager v. Wilmers,* 553 B.R. 102, 111 (S.D. Ohio 2015) (affirming determination of nondischargeability under § 523(a)(6) after state court determination that debtor engaged in intentional tort of battery).

Shortly after the Supreme Court's issuance of *Geiger,* the Sixth Circuit decided *Markowitz v. Campbell* (*In re Markowitz*), 190 F.3d 455, 464 (6th Cir. 1999). In *Markowitz* the court held that a willful injury occurs when the debtor "desires to cause consequences of his act, or . . . believes that the consequences are substantially certain to result from it." *Id.* (citing Restatement (Second) of Torts § 8A). In the Sixth Circuit, this is a subjective standard. *Markowitz*, 190 F.3d at 464. *See Trost v. Trost* (*In re Trost*), 735 F. App'x. 875, 878 (6th Cir. 2018); *Brown v. Ausley* (*In re Ausley*), 507 B.R. 234, 240 (Bankr. W.D. Tenn. 2014); *Hamerly v. Salupo* (*In re Salupo*), 386 B.R. 659, 669 (Bankr. N.D. Ohio 2008). It does not matter if a reasonable, objective person would have been aware of the consequences of his or her action; if the debtor did not subjectively intend those consequences or was not subjectively aware that the consequences were substantially certain to occur then the debtor's action was not willful.[9] The debtor, however, need not intend or anticipate the precise nature of the injuries suffered, only that injury would ensue from his acts. *Yeager*, 553 B.R. at 111 ("*Geiger* does not stand for the proposition that the debtor must intend to cause the precise injury that resulted (i.e., a leg injury))."

---

[9]*See Carrillo v. Su* (*In re Su*), 290 F.3d 1140, 1142-46 (9th Cir. 2002) noting that the Sixth Circuit has concluded that a debtor must subjectively intend the injury and comparing the subjective and objective approaches to determining nondischargebility under § 523(a)(6).

Nevertheless, in order to establish the intent necessary to prove nondischargeability, a debtor does not need to confess to desiring to injure or cause the consequences of his or her acts. It has long been recognized that "[a] debtor will rarely, if ever, admit to acting in a willful and malicious manner. [However,] both can be inferred from the circumstances surrounding the injury." *O'Brien v. Sintobin* (*In re Sintobin*), 253 B.R. 826, 831 (Bankr. N.D. Ohio 2000). *See Yeager*, 553 B.R. at 107 (similar); *CMEA Title Agency, Inc. v. Little* (*In re Little*), 335 B.R. 376, 383 (Bankr. N.D. Ohio 2005) (similar).

The other required element of § 523(a)(6) is malice. An act is malicious under § 523(a)(6) if it is "in conscious disregard of one's duties or without just cause or excuse . . ." *Wheeler v. Laudani*, 783 F.2d 610, 615 (6th Cir. 1986) (citations omitted); *Juett v. Casciano* (*In re Casciano*), Adv. No. 15-8013, 2016 WL 105926, (B.A.P. 6th Cir. Jan. 11, 2016); *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 923 (B.A.P. 6th Cir. 2000) and *Hoewischer v. White* (*In re White*), 551 B.R. 814, 822 (Bankr. S.D. Ohio 2016). "Malicious" under § 523(a)(6) does not require "ill-will or specific intent[.]" *Wheeler*, 783 F.2d at 615; *Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 308 (B.A.P. 6th Cir. 2004). While the term willful in § 523(a)(6) addresses the scienter aspect of the debtor's conduct, malice addresses whether the debtor had a legal justification or legal excuse for the otherwise culpable conduct, or acted in conscious disregard of one's duty. For example, a debtor's conduct is willful when the debtor strikes the creditor; but, the debtor's conduct is not malicious if the debtor acted in self-defense or in defense of others.[10] *Casciano*, 2016 WL 105926, at *6-7.

---

[10]There are cases which have held that following *Geiger*, the concept of "willful" and "malicious" have melded into a unitary standard. *See Marketgraphics Research Grp. Inc. v. Berge*, 245 F. Supp. 3d 973, 977 (M.D. Tenn. 2017) ("From the post- *In re Markowitz* cases, the Sixth Circuit has appeared to apply one single test for whether an injury was 'willful and malicious' rather than considering 'willful' and 'malicious' as separate elements."); *see also Jendusa-Nicolai v. Larsen*, 677 F.3d 320, 323 (7th Cir. 2012) (discussing the circuit split on whether "willful and malicious" is a unitary or dual standard following *Geiger*); *Gonzalez v. Moffitt* (*In re Moffitt*), 252 B.R. 916, 922 n. 5 (B.A.P. 6th Cir. 2000) (discussing the split). However, the Sixth Circuit restated the two-part test in a very recent unreported decision. *Trost v. Trost* (*In re Trost*), 735 F. App'x. 875, 878 (6th Cir. 2018). Also, 11 U.S.C. § 1328(a)(4) refers to "willful or malicious injury", suggesting these words have some separate meaning. *See e.g., B.B. v. Grossman* (*In re Grossman*), 538 B.R. 34, 39 (Bankr. E.D. Cal. 2015) ("The 'willful *or* malicious' injury component of the § 1328 exception to discharge differs from § 523(a)(6), which excepts from discharge debts that are the result of 'willful *and* malicious' injury." (emphasis in original)).

**B.** **The Bankruptcy Court Correctly Denied the Motion in Limine Regarding Boland's Intent to Injure**

Beginning with the second issue on appeal, Appellants seek a determination that the bankruptcy court erred in failing to apply collateral estoppel or issue preclusion[11] to preclude Boland from introducing evidence to deny that he intended to injure the children or that he was substantially certain that the children would be injured from his conduct. The Appellants' position is that the district court and Sixth Circuit decisions in the underlying civil damages litigation established that he was substantially certain that the children would be injured from his conduct.

The majority finds that the bankruptcy court did not err in not applying issue preclusion to prevent Boland from proceeding to trial as to his intent to injure because the district court and Sixth Circuit decisions did not determine whether Boland intended the injury to the children. Intent to injure was not an element of the criminal and civil statutes at issue in the civil litigation. Rather, the majority finds that the issue of Boland's intent to harm was a question of fact appropriate for determination through the bankruptcy court trial.[12] Issue preclusion applies in nondischargeability proceedings when facts or legal issues determined in prior litigation are relevant to the elements of a creditor's § 523 claim. *Grogan v. Garner*, 498 U.S. 279, 284, 111 S. Ct. 654, 658 n. 11 (1991); *Sill v. Sweeney* (*In re Sweeney*), 276 B.R. 186, 189 (B.A.P. 6th Cir. 2002). Since the underlying civil judgment against Boland was issued by a federal district court in a federal question case, federal common law applies. *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 507-08, 121 S. Ct. 1021, 1027-28 (2001); *Trantham*, 304 B.R. at 305.

Federal issue preclusion requires "that the precise issue in the later proceedings have been raised in the prior proceeding, that the issue was actually litigated, and that the determination was necessary to the outcome." *Spilman v. Harley*, 656 F.2d 224, 228 (6th Cir.

---

[11]It has been noted that the "Sixth Circuit has stated a preference for the use of the term 'issue preclusion' instead of the term 'collateral estoppel.'" *Hoewischer v. White* (*In re White*), 551 B.R. 814, 823 n.2 (Bankr. S.D. Ohio 2016) (citing *Heyliger v. State Univ. and Cmty. Coll. Sys. of Tenn.*, 126 F.3d 849, 852 (6th Cir. 1997) and *Barnes v. McDowell*, 848 F.2d 725, 728 n. 5 (6th Cir. 1988)). For that reason, the Panel will use the term issue preclusion.

[12]A motion in limine generally excludes prejudicial evidence or evidence that should not be brought before the trier of fact, such as privileged material or inadmissible evidence, but does not resolve factual disputes.

1981) (overruled on other grounds by *Bay Area Factors v. Calvert* (*In re Calvert*), 105 F.3d 315, 319 (6th Cir. 1997)).

The triggering event for the district court litigation was Boland entering into the Diversion Agreement through which he stipulated that he violated 18 U.S.C. § 2252A(a)(5)(B). That section provides that a person commits a crime when he:

> knowingly possesses, or knowingly accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer[.]

18 U.S.C. § 2252A(a)(5)(B).

The elements required to prove an individual knowingly possessed child pornography in violation of 18 U.S.C. § 2252A(a)(5)(B) are:

> (1) the defendant knowingly possessed visual depictions of child pornography; (2) the visual depictions were transported in or affecting interstate or foreign commerce, or were produced using materials that had been transported in or affecting such commerce; and (3) the defendant knew of the sexually explicit nature of the material and that the visual depictions were of actual minors engaged in that sexually explicit conduct.

*Busching v. United States*, TDC-15-0107, 2018 WL 3546720, at *5 (D. Md. July 24, 2018) (quoting *United States v. Koegel*, 777 F. Supp. 2d 1014, 1022 (E.D. Va. 2011) (internal quotation marks omitted)).

Knowing possession of child pornography is a general intent crime. *Busching*, 2018 WL 3546720, at *4. "'[A] general intent crime does not require that the defendant intend the precise purpose or results of the crime but only that the defendant intentionally engage in the *actus reus* [the physical act] of the crime[.]'" *Id.* at *3 (quoting *United States v. White*, 670 F.3d 498, 508 (4th Cir. 2012)). Accordingly, the issue of Boland's intent to injure the Appellants was not a required element of the underlying crime.

Nor is it a necessary element under the civil remedy. Section 2255(a) provides in pertinent part that:

> Any person who, while a minor, was a victim of a violation of section … 2252A . . . of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court and shall recover the actual damages such person sustains or liquidated damages in the amount of $150,000, and the cost of the suit, including a reasonable attorney's fee. Any persons described in the preceding sentence shall be deemed to have sustained damages of no less than $150,000 in value.

18 U.S.C. § 2255(a).[13] Section 2252A(f) provides in pertinent part that:

> Any person aggrieved by reason of the conduct prohibited under subsection (a) or (b) or section 1466A may commence a civil action for compensatory and punitive damages, injunctive relief, and reasonable attorney fees and costs.

18 U.S.C. § 2252A(f).

The pertinent issues in the civil litigation were (1) whether the Appellants suffered "personal injury" under § 2255 as a result of Boland's conduct, and (2) whether the Appellants were "persons aggrieved" entitling them to monetary damages under § 2252A(f). *Lora v. Boland*, 825 F. Supp. 2d 905, 908 (N.D. Ohio 2011). In finding in favor of the Appellants, the district court and the Sixth Circuit wrote in great detail about the type of injury Boland caused and when that injury arose. As the Sixth Circuit explained:

> Like a defamatory statement, pornography injures a child's reputation and emotional well-being, and violates the individual interest in avoiding disclosure of personal matters. Morphed images are of a piece, offering a difference in degree of injury but not in kind. Boland created lasting images of Doe and Roe, two identifiable children, purporting to engage in sexually explicit activity. If the point of Boland's exercise was to demonstrate that the naked eye cannot distinguish morphed images of child pornography from real child pornography, as he claims it was, that goes a long way toward confirming that morphed images may create many of the same reputational, emotional and privacy injuries as actual pornography. And like defamation, those harms are "personal injuries."
> \*\*\*

---

[13]This version was in effect when the district court litigation occurred. It has been amended twice since that time.

In this instance, the plaintiffs became victims of Boland's conduct at the same time that they suffered injuries, namely the moment Boland created the morphed images with their likenesses.

*Doe v. Boland*, 698 F.3d 877, 880-81 (6th Cir. 2012) (internal quotation marks and citations omitted). The focus of the civil litigation was on whether the Appellants were injured by Boland's conduct and therefore entitled to damages—not on whether Boland intended to injure the Appellants. Indeed, in dicta, the Sixth Circuit noted:

> This $300,000 award undoubtedly amounts to tough medicine for Boland. When he created morphed images, he intended to help criminal defendants, not harm innocent children. Yet his actions did harm children, and Congress has shown that it "means business" in addressing this problem by creating sizeable damages awards for victims of this conduct.

*Id*. at 885 (citations omitted). Accordingly, the issue of whether Boland intended to injure the Appellants was not actually litigated or necessary to the outcome of the prior federal litigation. As such, the bankruptcy court did not err in denying Appellants' motion in limine as to the intent element.

### C. By Misconstruing the Nature of Appellants' Legal Injury, the Bankruptcy Court Erred in Finding the Debts Owed Appellants Were Dischargeable

The bankruptcy court based its conclusion regarding Boland's lack of intent to harm the Appellants on Boland's purpose or motive for creating and possessing the images, which was not to harm children, but to assist courts, lawyers, and criminal defendants with his expert testimony and demonstrative exhibits. *See Doe v. Boland*, Adv. No. 16-1058, 2017 WL 2312854 (Bankr. N.D. Ohio May 26, 2017). The bankruptcy court, however, misapprehended the nature of the injuries suffered by the Appellants and the violations committed by Boland.

An injury is "the invasion of any legally protected interest of another." *Doe v. Boland*, 698 F.3d at 881; *see also Steier v. Best (In re Best)*, 109 F. App'x. 1 (6th Cir. 2004). In order for the injury to result in a nondischargeable debt under § 523(a)(6), the "injury must invade the creditor's legal rights . . . 'in the technical sense, not simply harm to a person.'" *Musilli v. Droomers (In re Musilli)*, 379 F. App'x. 494, 498 (6th Cir. 2010) (citation omitted); *Almasudi v.*

*Ibrahim* (*In re Ibrahim*), 580 B.R. 218, 226 (Bankr. E.D. Tenn. 2017). Again, the debtor need not intend the precise injury that the creditor may suffer. *Yeager*, 553 B.R. at 111.

The Sixth Circuit characterized the Appellants' injuries as a violation of the children's legally protected interests in their reputation, emotional well-being and right to privacy. *Doe v. Boland*, 698 F.3d at 880-84. When one focuses on this true injury to the Appellants, the Panel is left with the definite and firm conviction that the bankruptcy court erred in finding that Boland's debt owed to the Appellants is dischargeable.

A debtor's intent to injure for purposes of § 523(a)(6) may not be presumed merely by the nature of the offense itself. *Lewis v. Long* (*In re Long*), 528 B.R. 655, 663 (Bankr. W.D. Va. 2015) (finding intent could not be presumed based on statutory rape conviction). Intent, however, "can be inferred through the circumstances surrounding the injury." *Sintobin*, 253 B.R. at 831; *Risk v. Hunter* (*In re Hunter*), 535 B.R. 203, 218 (Bankr. N.D. Ohio 2015) (concluding in a § 523(a)(2)(A) claim that "[f]raudulent intent may be inferred; it cannot be presumed." (internal citation and quotation marks omitted)). For example, courts have inferred the intent to injure for purposes of § 523(a)(6) based on the invasion of a child's privacy and reputational interests. In *Dardinger*, the court found that the debtor committed a willful injury under § 523(a)(6) when he surreptitiously videoed his stepdaughter in various stages of undress. *Dardinger v. Dardinger* (*In re Dardinger*), 566 B.R. 481, 501-02 (Bankr. S.D. Ohio 2017). The court stated:

> To conclude that these actions, which took place over an 11-month time period, were undertaken with anything other than the intent to cause Allison injury or with the belief that injury to her was substantially certain to occur, would strain logic beyond all reasonable bounds.

*Id*. Similarly, in a case involving adult pornography, a court found that the invasion of the creditor's right to privacy by posting nude photos of the creditor on a "revenge porn" website without her consent was substantially certain to cause harm, leaving no doubt that the debtor intended to harm the creditor. *Hoewischer v. White* (*In re White*), 551 B.R. 814, 822 (Bankr. S.D. Ohio 2016) (finding the debtor was substantially certain that the act of posting nude photos of the creditor on a "revenge porn" website without her consent would cause harm for purposes of § 523(a)(6)).

Boland's intentional acts of creating and displaying the images of the Appellants in pornographic acts would lead an average person to know that Appellants' privacy and reputation interests would be invaded. But the standard in the Sixth Circuit for willfulness is not objective. Perhaps, theoretically, an individual could possess these types of morphed pornographic images, and lack the capacity to understand it was an invasion of the Appellants' privacy and reputation interests. But in this case, the evidence from the trial unquestionably established that Boland, of all individuals, fully understood that his intentional creation, possession, and use of the morphed pornographic images of the children invaded the children's interests in their privacy and reputation.

Boland was well-versed in the law and particularly computers and digital imaging, holding himself out at the pertinent time as an expert in that area. Tr. 50:11-12. From 1996 until 2000 he worked as an assistant prosecutor with the Cuyahoga County Prosecutor's Office. He then taught classes as an adjunct professor of law in the computer and technology area at Case Western Reserve University School of Law (Computers and Crime, Fall 2000 & 2001; eEvidence, Spring 2001), Cleveland State University John Marshall School of Law (Computers and the Law, Spring 2001 – ["Present"]; Computers and the Law, Electronic Evidence), Cuyahoga Community College (Computers and Criminal Justice, Spring 2004; Criminal Law, Spring 2004). Tr. 49:13-50:4; Trial Ex. 5. Boland was also the author of two books: *Boland's Computer Crime Manual*, which he described as "[a] practice manual for prosecutors, defense attorneys, judges and law enforcement officials handling cutting edge cybercrime issues," and *Boland's Electronic Evidence Manual*, which he described as "[a] practice manual for prosecutors, defense attorneys, judges and law enforcement officials handling electronic evidence and digital images." Trial Ex. 5. He also wrote a number of articles for various legal publications pertaining to computers, technology, and the law. *Id.*

As a lawyer and expert witness in the field of criminal defense in child pornography cases, Boland was aware that the use of identifiable real children[14] in pornographic images was

---

[14]A necessary element of 18 U.S.C. § 2252A(a)(5)(B) is that the pornographic image is that of a real child. *Supra* at 5. Having been held civilly liable under 18 U.S.C. § 2255(a) for violating § 2252A(a)(5)(B), Boland is precluded from arguing that he did not know that the Appellants were real children when he downloaded and used their images to create the morphed pornographic images.

proscribed. That was the entire basis of his expert testimony—to create doubt as to whether an image was an identifiable real child. Indeed, his own testimony established that he intended to portray the children (falsely) as engaging in sexual activity and to share the false and scandalous depictions in court in defense of criminal defendants or to aid the court in its decision. It similarly follows that based on his expertise, Boland was aware of the harms inherent in violating child pornography laws.

Boland's actions further support that he was substantially certain that harm would follow from creating and displaying the morphed pornographic images containing the Appellants' likenesses. Following the *Shreck* trial in Oklahoma, Boland admitted that he was aware that some people may have viewed his actions as having constituted a crime. Tr. 71:11-14. He even took steps to avoid potential arrest upon his return to Cleveland by sending his computer by FedEx to his mother's address. Tr. 62:6-63:5, 69:6-70:8, 87:18-21. These actions indicate a subjective knowledge of intentional wrongful conduct, the inherent consequences of which were well known to Boland as a lawyer and expert in this area of the law.

Boland's motivation for creating and displaying the pornographic images of the children does not absolve him from liability. While his purpose in doing so may have been to aid criminal defendants and courts with his expert testimony and presentations, the resulting consequences, of which he was well aware, were to harm the privacy and reputational interests of the children. *See Monsanto Co. v. Trantham* (*In re Trantham*), 304 B.R. 298, 307 (B.A.P. 6th Cir. 2004) (noting that the motive of a bank robber is to enrich himself, not to injure the bank; but, nonetheless, the bank robber has committed an intentional tort and it is substantially certain that injury will result); *Kraus Anderson Capital, Inc. v. Bradley* (*In re Bradley*), 507 B.R. 192, 204 n. 5 (B.A.P. 6th Cir. 2014) (concluding that a debtor's motivation to save his business did not mean that he did not intend to deprive the creditor of its collateral).

In summary, by focusing on Boland's motive or purpose for creating and using the images, the bankruptcy court misconstrued the nature of the Appellants' legal injury. The bankruptcy court should have determined whether Boland intended to invade the Appellants' legally protected interests—that being their reputation, emotional well-being and right to privacy—or whether Boland was substantially certain that those interests would be invaded as a

result of his conduct in creating, possessing, and displaying the images. When one focuses on this true injury to the Appellants, the evidence at trial established that Boland knew or was substantially certain that the Appellants' legal privacy and reputational interests would be harmed by his conduct. As such, the Panel is left with the definite and firm conviction that the bankruptcy court erred in finding that Boland's debt owed to the Appellants is dischargeable.

**D.        Boland's Actions Meet the Standard for Maliciousness Under § 523(a)(6)**

In addition to the requirement of proving that the injury was willful, § 523(a)(6) also requires proof that the injury was malicious, which is defined as an act taken "in conscious disregard of one's duties or without justification or excuse[.]" *Wheeler*, 783 F.2d at 615. The bankruptcy court did not address the malice requirement. However, the question of legal justification was exhaustively litigated, analyzed and rejected by the District Court for the Northern District of Ohio, the United States Sixth Circuit Court of Appeals and the Supreme Court of Ohio.

In the prior litigation, Boland argued that his conduct in creating, possessing and using the morphed pornographic images of the Appellants was legally excused because he was defending criminal defendants and assisting courts in child pornography cases. Thus, he argued that: a) he was only using the images to defend criminal defendants; b) the morphed images were only displayed during court proceedings before limited court participants; c) he was subject to immunity because of the use of the images in court proceedings; and d) his conduct was constitutionally protected. In short, Boland, as a leading expert in this niche area of the law, believed that his situation was different from other individuals who create or possess child pornography because he was acting as an expert or a lawyer using these images for what he considered legitimate legal purposes.

The federal rejections of Boland's justification, excuse, and immunity arguments are contained in the district court and Sixth Circuit decisions in the *Doe v. Boland* litigation. Boland argued that his use of the morphed images of the children was constitutionally protected under the First and Sixth Amendments to the United States Constitution. As to his First Amendment argument, the Sixth Circuit stated:

Even if Doe and Roe never see the images, the specter of pornographic images will cause them "continuing harm by haunting [them] in years to come." As a result, it is immaterial that Boland never displayed these images outside of a courtroom and never transmitted them electronically. The creation and initial publication of the images itself harmed Jane Doe and Jane Roe, and that is enough to remove Boland's actions from the protections of the First Amendment.

*Doe v. Boland*, 698 F.3d 877, 884 (6th Cir. 2012) (citation omitted). As to his Sixth Amendment argument that a criminal defendant has the right to put on an effective defense, the Court stated:

And no constitutional principle at any rate allows a criminal defendant to defend *one* criminal charge by urging his lawyer or witness to commit *another*. Otherwise, an individual on trial for a murder-by-stabbing charge could try to prove that the knife was not long enough to kill someone by using it to stab someone else in the middle of the trial. Or individuals on trial for counterfeiting or manufacturing drugs might be able to make more of the contraband as part of a defense. If the Constitution is not a "suicide pact," it is not an instrument of crime either.

*Doe v. Boland*, 630 F.3d 491, 496 (6th Cir. 2011) (citations omitted).

Boland also argued that his conduct was protected by state statutes providing immunity from prosecution for child pornography if the images are used for "bona fide judicial purposes." Ohio Rev. Code §§ 2907.321(B)(1), .322(B)(1), .322(B)(3).[15] The Supreme Court of Ohio has rejected this defense:

Brady's argument that he would like his expert to create exhibits for use at trial is also not well taken. It is axiomatic that an expert's conduct must conform to the law. If in preparing for trial, Boland were to create images of real children engaging in sexually explicit conduct, or modify images of identifiable children to appear that they are engaging in sexual conduct, his conduct would violate federal law.

*Ohio v. Brady*, 894 N.E.2d 671, 679 (Ohio 2008). Following the Ohio Supreme Court's decision in *Brady*, the Sixth Circuit stated:

---

[15]Ohio Revised Code § 2907.321 addresses "Pandering obscenity to a minor" and § 2907.322 addresses "[p]andering sexual orientated matter involving a minor." Both statutes provide an exception for a "bona fide . . . judicial, or other proper purpose" by a "prosecutor", "judge" or "person having a proper interest in the material or performance." Ohio Revised Code §§ 2907.322(B)(1) and 2907.321(B)(1) are unchanged since the time of these events to the present. A similar exception exists for "[i]llegal use of a minor in nudity-oriented material or performance." Ohio Rev. Code § 2907.323(3)(a).

Nor is this a case in which state law authorized Boland's conduct while federal law punished it. Ohio law provides immunity from state child pornography statutes if the images are used for "bona fide judicial purposes." But this immunity does not help Boland. It applies if there was a "bona fide" need to create and possess these images, and Boland has not shown how that was so, given the other means at his disposal to illustrate the difficulty of discerning real from virtual images.

*Boland*, 630 F.3d at 497 (citation omitted). The Sixth Circuit went on to hold that his conduct also was not protected by any common law immunities. *Id.* at 498-99. The district court also rejected his claim of immunities. *Doe v. Boland*, Case No. 1:07-cv-2787, 2007 U.S. Dist. LEXIS 85254, at *5 (N.D. Ohio 2007).

Accordingly, Boland's various arguments seeking to legally justify or be excused from his intentional conduct in morphing the children's photographs into pornographic images, possessing those images, and then publishing those images to court participants, were rejected by the United States District Court for the Northern District of Ohio, the United States Sixth Circuit Court of Appeals, and the Ohio Supreme Court. The injury he caused, therefore, qualifies as "malicious" within the meaning of § 523(a)(6) as it was undertaken without justification or excuse.

## V. CONCLUSION

For the foregoing reasons, the order of the bankruptcy court contained within its *Amended Memorandum of Opinion and Order* is reversed and vacated. The bankruptcy court shall enter judgment for Jane Doe and Jane Roe consistent with this decision.

_____

**CONCURRENCE**

_____

SCOTT W. DALES, Bankruptcy Appellate Panel Judge, concurring in the judgment.

I concur in the result the Panel announces, but write separately regarding my view of the willful injury Mr. Boland inflicted on the Appellants.

As the Sixth Circuit explained in affirming the imposition of the $300,000 statutory award under 18 U.S.C. § 2252A(f), Mr. Boland injured the Appellants by creating and sharing the doctored images falsely depicting the children as engaging in sexual activity. In view of the Sixth Circuit's explanation, the majority correctly identifies this as the injury for purposes of the analysis under 11 U.S.C. § 523(a)(6), taking care to distinguish Mr. Boland's motive or purpose from his intent to injure.

Mr. Boland's own testimony establishes that he intended to falsely portray the Appellants as engaging in sexual activity and to publish the images, albeit to a limited audience. His manipulation and publication of the Appellants' photographs — the invasion of their privacy and reputational interests —was not inadvertent, but entirely intentional, as the pre-bankruptcy litigation established. Under the unusual circumstances of this case, this very act was the injury, as the Sixth Circuit held. *Doe v. Boland*, 698 F.3d 877, 881 (6th Cir. 2012) ("[T]he plaintiffs became victims of Boland's conduct at the same time that they suffered injuries, namely the moment Boland created the morphed images with their likenesses.").

That Mr. Boland was indifferent to the harm or other embarrassment that might befall the Appellants, or that he assumed they would never find out about the offending images, does not undercut his admission that he deliberately sacrificed their privacy interests for the sake of his criminal clientele. Though only for a moment (until he revealed his artifice in court), he intended his criminal court audiences to believe that the Appellants, as minors, had engaged in the sex acts depicted in the images he quite intentionally created and published. Though acquittal of his clients was his purpose in creating the pornography using the images of innocent children, he clearly intended to create the photographs. Neither the trial court nor the Panel need

search his heart, through inference or otherwise, to know that he intended to invade the Appellants' privacy because he admitted as much throughout the litigation.

For this reason, and others set forth in the majority's opinion, I concur in declaring that Mr. Boland's debt to the Appellants must be excepted from discharge under § 523(a)(6), but I disagree that any issue of intent remained after the United States District Court entered judgment against Mr. Boland based on his admission that he knowingly created the offending images.